# Texas Mutual Life Insurance Association v. Mrs. Hanna C. Tolbert.

No. 7086. Decided February 14, 1940.
(136 S. W., 2d Series, 584.)

*Richey, Sheehy & Teeling,* of Waco, for plaintiff in error.

The facts that checks tendered to cover assessments due under a policy of insurance, while received by the association within the grace period, were on a number of occasions not actually presented to and paid by the bank on which they were drawn until after the grace period had expired, would not establish a custom waiving the association's right to forfeit a certificate for nonpayment of premium where the check to cover same was returned unpaid on account of insufficient funds, and a money order given to cover same was not received until after the grace period had expired. Waggoner Bank & Tr. Co. v. Garner Co., (Texas Supreme Court) 213 S. W. 927; 48 C. J. 618; Illinois Bankers Life Co. v. Payne, 62 S. W. (2d) 316.

*Robert L. Holliday* and *Henry T. Moore,* both of El Paso, for defendant in error.

PER CURIAM.

This case was submitted to and decided by Section A of the Commission of Appeals, in an opinion by Judge German reported in 116 S. W. (2d) 1060. On motion for rehearing the cause was withdrawn from the Commission of Appeals and the judgment of reversal and rendition set aside and submitted

to the nine-judge Court. A reconsideration of the questions of law involved convinces us that the opinion written by Judge German correctly states the rules of the law applicable to the facts of this case. Therefore, that opinion is readopted by this Court. The opinion is as follows:

"On or about October 21, 1929, William Thomas Tolbert was issued a certificate of insurance by the Texas Mutual Life Insurance Association in the sum of $5000. This certificate provided for the payment of certain annual dues, and for an assessment in the sum of $5.50 payable upon the death of any member. Tolbert remained in good standing until February 21, 1933. On that date an assessment of $5.50 was made because of the death of a member and due notice was given. On February 23, 1933, Tolbert mailed check of Tolbert Commission Company in the sum of $5.50 to the Association. Tolbert lived at El Paso, Texas, and the general office of the Association was at Waco, Texas. The check was received at Waco in due course, credit given upon the books of the Company for same, and was returned in due course to the bank at El Paso, Texas, for collection. Apparently it was presented for collection on March 1, 1933, and when presented there were not sufficient funds to the credit of the Tolbert Commission Company to pay same. It was thereupon marked 'insufficient funds.' Sometime during that day a deposit was made in the bank by the Tolbert Commission Company sufficient to have paid the check, but it was not paid by the bank. Beginning with March 2, which was a holiday, and continuing some ten days due to the National moratorium, the bank was closed. Apparently about March 12, the check was returned by the bank to the Association at Waco unpaid, bearing the notation 'insufficient funds.' On March 14, 1933, the Association wrote Tolbert as follows:

"'Your check in amount of $5.50 drawn on the El Paso National Bank, El Paso, Texas, signed "Tolbert Com. Co., by W. T. Tolbert," has been returned to us with the notation "insufficient funds." This check was sent in payment of assessment due by you.

"'Won't you kindly let us have remittance in the sum of $5.50 covering this returned item, in order that we may consider placing this amount to your credit, as your policy is not in benefit at this time? Self addressed envelope is for your convenience.'

"On receipt of the letter Tolbert procured postoffice money order for $5.50 and immediately sent same to the Association. On March 17, 1933, the Association addressed the following letter to Tolbert:

" 'We wish to acknowledge receipt of your Money Order in the amount of $5.50 sent to cover returned check. In view of the fact that the grace period of the assessment has expired it will be necessary that you execute the attached application for reinstatement and return to this office for our consideration. Self addressed envelope is for your convience.' "

"Tolbert was then in bad health and never executed application for reinstatement. A few days later, the Association returned the check and also the money order, notifying Tolbert that the Association considered his certificate forfeited. Thereupon Tolbert wrote the Association that he considered his certificate in good standing, and no further assessments were made or paid. Tolbert died April 20, 1934, and this suit followed. Mrs. Hannah C. Tolbert, surviving wife of William Thomas Tolbert, who was named as beneficiary in the certificate, was plaintiff and will be so designated here. Judgment in the trial court was for plaintiff for the full amount of the certificate, and this judgment was affirmed by the Court of Civil Appeals. 91 S. W. (2d) 900.

"Among the pertinent provisions of the certificate are the following:

" 'This insurance is granted in consideration of the application hereof, a copy of which is attached hereto and which is made a part of this contract, and of the payment of each assessment which shall be levied by the directors of the Texas Mutual Life Insurance Association upon the death of a member hereof, as follows: $5.50 upon the death of any member in this class within ten days from the date of notice of such death, and one assessment per year as annual dues of $5.50 to be paid on or before the 1st day of October each year.

" 'It is further agreed that failure to pay any assessment so levied within ten days from date of notice or to pay said annual dues shall forfeit all claims as a member of the Texas Mutual Life Insurance Association.

" '* * *

" 'Assessment notices are posted to the last known address of the policyholder; however, failure to receive such notice does not relieve the policyholder of liability for payment of any assessment due. Remittances for assessments due should be sent in time to reach the Home Office of the Association by the tenth day after notices have been mailed, for, unless actually received by the tenth day after notices have been mailed, this policy shall automatically lapse and all benefits hereunder shall

be forfeited until reinstatement of this policy has been approved by the Association.

" 'This policy may be reinstated by the insured furnishing the Association evidence of good health, satisfactory to the Association within ninety (90) days after it has lapsed and the payment of all past due assessments.

" '* * *

" 'The obligations assumed by the members of this Association shall be several and separate as to each member and not the joint obligation of all." * * *

" 'This policy is subject to all the by-laws of the Association now in force or that may hereafter be enacted.'

"Among the pertinent provisions of the by-laws of the Association are the following:

" '* * *

" 'A certificate of membership to become effective and be binding is conditioned upon the payment in full of the application fee having been actually received by said Association and upon the payment having been actually completed of subsequent assessments as may be levied by the officers of the Association on such certificates. *Completion of payment of the membership fee or of any subsequent assessment shall be conditioned upon any check or instrument, tendered to cover such payment, being paid in accordance with its tenor and a bona fide remittance made to cover such payment.* (Emphasis ours.)

" 'Failure on the part of any member of any class of this Association to pay any assessment within ten days from date of notice thereof, or failure to pay Annual Dues or the Special Benefit Assessments when same are due or failure to have completed payment of application fee in full, shall act as a complete forfeiture of all the rights of any member of said Association to any claim against said Association and said certificate issued to said member by the Association shall become null and void and of no effect.

" '* * *

" 'Upon the rights of any member of said Association being forfeited in the manner and under the conditions as above set forth, said member shall have the right to apply for reinstatement in said Association under the following conditions, to-wit: such reinstatement application may be considered by the Association upon the payment of the sum of Five Dollars and Fifty Cents ($5.50) or the amount of one assessment called for in his former certificate, provided however the officers of said Association may, at their option, require as a condition precedent to the reinstatement of any lapsed member that such

lapsed member pay all assessments that have accrued in said class during the period in which said member's certificate was lapsed. The officers may further require at their option any lapsed member to sign a new application for membership in said Association and if such application is accepted may issue a new certificate to such member. The acceptance of any application for reinstatement shall be entirely optional with the officers of the Association in any event. Reinstatement of any member who has lapsed shall not be complete and the policy shall not be in force until written notice of reinstatement has been actually received into the manual possession of the applicant while alive and in good health, and unless written notice of such reinstatement is actually so received by applicant while alive and in good health said policy shall be void and of no force and effect.'

■ "Although it is undisputed that the assessment of February 21, 1933, was not paid within the grace period of ten days, and by the express terms of the contract the certificate became forfeited at the end of such period, nevertheless plaintiff (defendant in error) contends that there was no forfeiture for two reasons. In the first place it is contended that the crediting of the check upon the books of the Association constituted an unconditional payment of the assessment, notwithstanding it was later returned by the bank unpaid. This precise question was determined contrary to plaintiff's contention in the recent case of Texas Mutual Life Insurance Company v. Smartt, 131 Texas 227, 114 S. W. (2d) 528. In that case the same Association and the identical policy were involved that are involved here, and almost exactly the same method of procedure was followed as was followed in this case.

■ "It is next contended by plaintiff that the right to claim forfeiture by reason of the failure to pay the assessment within the ten day period was waived by the Association; and the Court of Civil Appeals so held. The basis of such contention is that the Association had on several previous occasions credited assessments as paid when the remittance to pay checks had not reached the office of the Association until after the expiration of the grace period, and on perhaps two occasions the checks had been returned unpaid, but the Association had accepted payment made in some other manner after the grace period. The situation here manifestly shows no intention to waive, but on the contrary shows that the ipso facto forfeiture provided for was fully recognized, and also shows an attempt to strictly and

literally follow the plain provisions of the certificate and by-laws.

"It is obvious that for convenience in the transaction of business the Association had made provision for conditional payments of assessments by checks. According, however, to the plain language of the by-laws as well as universal custom, the checks were to be accepted only conditionally and the burden rested upon the member not only to see that the check was honored when presented, but that 'bona fide remittance be made to cover such payment.' As directly pertinent to this method of transacting business by mutual assessment insurance companies we deem it appropriate to quote the following language of the court from the case of Martin v. Illinois Bankers Life Assurance Company, 91 S. W. (2d) 646, in which the facts were very similar to the facts of the present case:

" 'Plaintiff argues that the comany, by taking the check for collection, held off the lapsing of the policy while the check was being sent through banking channels for the purpose of its collection, and that having thus expressed its willingness and intention to accept the belated premium payment by check and not having treated the policy as lapsed or forfeited at or prior to the time of the death of the insured, the company could not thereafter claim a forfeiture of the policy as of a time prior to the death of the insured upon the theory that the check was not paid by the drawee bank upon its presentment to the bank for payment.

" 'The fallacy of plaintiff's argument is that it presupposes that the necessary consequence of the company's conditional receipt was to *keep the policy in benefit* whether the check given for the last premium was paid or not, whereas its obligation was instead to *waive a forfeiture only in the event the check was actually paid upon presentment.* Upon the expiration of the allotted grace period, the company would have had the un-doubted right to have declared a forfeiture of the policy for the nonpayment of the premium during such period, and by its acceptance of the insured's check after the expiration of such period and its issuance of its conditional receipt therefor the company is obviously to be held to have waived such rights as were voluntarily relinquished by it in so doing. However its waiver extended no further than the measure of the right waived, which was the right to claim a lapsing of the policy in the event the check should be paid upon presentment, *and having never agreed or consented to continue the life of the policy in the event the check was not paid upon presentment,*

*we see no basis for plaintiff's claim of waiver when the admitted fact is that the check was not paid.*

" 'It is a universal rule of law that in the absence of an agreement to the contrary, the delivery of a check to the creditor and his acceptance of it is not payment of the debt or oligation until the check has itself been paid, and that when the check is not paid, it may not be said to have constituted payment of the debt or obligation for which it was given. Moreover, this rule extends as well to transactions falling within the purview of insurance law, which contemplates that insurance premiums are ordinarily to be paid in cash, and that in the absence of a different intention or agreement, the giving of a check therefor will not operate as payment. Gibson v. Texas Prudential Insurance Co. 229, Mo. App 867, 86 S. W. (2d) 400.' (Emphasis ours.)

"It will be observed that in the letter of March 14, 1933, the Association, instead of holding in reserve the right to declare the forfeiture if remittance was not made to pay the dishonored check, expressly stated 'your policy is not in benefit at this time.' This was merely declaring what the contract had expressly provided. The request for remittance to take up the dishonored check is not to be considered as a waiver, because it is clearly stated that if the amount is paid, the Association will then 'consider' placing the amount to the member's credit; meaning, obviously, that this was to be done if Tolbert made application for reinstatement as was provided by requirement of the by-laws. It will be observed from the provision last quoted from the by-laws that the application for reinstatement would not be 'considered' until after remittance of the $5.50. This is forcefully emphasized by the letter of March 17, 1933, acknowledging receipt of the money order and stating that 'it will be necessary that you execute the attached application for reinstatement and return to this office for our consideration.' Under the certificate and by-laws, which constituted the contract between the several members of the Association as well as between the Association and its members, the Association had no other alternative in the matter. Manifestly there could be no waiver by a strict compliance with the certificate and by-laws.

■ "The failure of the bank to return the dishonored check on March 1, and its negligence, if any, in returning same marked 'insufficient funds,' after deposit had been made sufficient to pay same, cannot aid plaintiff, so far as the Association is concerned. The bank was not its agent in these matters. The con-

tract expressly provided that 'remittances for assessments due should be sent in time to reach the home office of the Association by the tenth day after notices have been mailed, for, unless actually received by the tenth day after notices have been mailed, this policy shall automatically lapse and all benefits hereunder shall be forfeited, until reinstatement of this policy has been approved by the Association.' This rigid requirement was to some extent relinquished by the conditional acceptance of checks, subject of course to their actual payment, as above indicated.

"As the policy was by its express terms forfeited, and Tolbert made no effort to be reinstated according to its provisions, the Association was not liable."

■ We shall notice further contentions made by the defendant in error, both in her motion for rehearing and at submission. It is insisted that the rule announced in the case of Texas Mutual Life Insurance Association v. Smartt, 131 Texas 227, 114 S. W. (2d) 528 (supra) is not applicable to the present case because the certificate here involved was delivered before the enacement of the by-law providing "completion of payment of the membership fee or of any subsequent assessment shall be conditioned upon any check or instrument, tendered to cover such payment, being paid in accordance with its tenor and a bona fide remittance made to cover such payment." Hence, such by-laws was not binding on the insured, absent notice of the enactment thereof. The certificate in suit at the time of its delivery was by express agreement "subject to all the by-laws of the association now in force or that may hereafter be enacted." Thus the insured agreed to be bound by any legal by-law thereafter enacted by the association. This is true regardless of notice to the insured of the enactment of such by-law. Eversberg v. Supreme Tent Knights of Macabees of the World, 77 S. W. 264 (writ refused), especially so when the by-law, as in this case, does not offend against any rule of law nor impair vested rights.

■ It is insisted that the association, by its acceptance of payments of assessments after the ten-day grace period had elapsed without invoking the ipso facto forfeiture provision of the certificate, is estopped to urge such forfeiture at the time the last assessment became delinquent and that the association had established a custom of accepting belated payments of assessments to the extent of showing a clear intention on the part of the association to waive such forfeiture provision of the contract. The alleged facts upon which both theories are predi-

cated are that during the life of the certificate the holder of the certificate had paid by check and the association had received such checks, nineteen of which were belated payments out of a total of some fifty assessments due and paid. To be able to say that nineteen of the assessments were paid after the ten-day grace period had elapsed, the time payment must be calculated from the date of notice of the assessment to the time when the insured's check was actually paid at his bank in El Paso, Texas. The correct calculation should be, we think, computed from the date of notice of the assessment to the time of the delivery of the check to the association, for such "transactions where a check is received as conditional payment the payment becomes absolute and relates to the date of the delivery of the check when its recipient actually cashes it." Hooker v. Burr, (Sup. Ct. of California) 137 Cal. 663, 70 Pac. 778, 21 R. C. L. p. 70, Sec. 69.

Applying the rule stated to the checks passing between the insured and the association, it cannot be said that the association accepted belated payments more than two or three times, and of course such action would not create an estoppel against the association to invoke the plain forfeiture provisions of the certificate and by-laws. Nor can it be said that the holder of the certificate was by such conduct on the part of the association led to believe that the association would not insist on the forfeiture provisions of the certificate.

It follows, therefore, that the judgment of the Court of Civil Appeals and of the district court should be reversed and judgment is here rendered in favor of plaintiff in error at the costs of defendant in error.

Opinion adopted by the Supreme Court February 14, 1940.