## COMMONWEALTH CASUALTY & INS. CO. v. STEPHENS.

### No. 2267.

Court of Civil Appeals of Texas. Waco.

April 17, 1941.

Goggans & Ritchie, John G. Whitaker, and William P. Goar, all of Dallas, for appellant.

Maynard F. Robinson, of San Antonio, for appellee.

RICE, Chief Justice.

This suit was brought in the county court of Johnson county by Frank B. Stephens as plaintiff against Commonwealth Casualty & Insurance Company as defendant, for recovery of benefits alleged to be due under the terms of a health and accident insurance policy issued by the defendant to the plaintiff. The case was tried before the court, a jury being waived, and from a judgment in favor of the plaintiff in the sum of $375 defendant appeals.

The plaintiff, by his pleading and the evidence submitted thereunder, predicated his cause of action on that section of the insurance contract whereby the defendant obligated itself to "pay at the rate of the monthly sickness indemnity ($100.00) herein specified, but not to exceed six months, for the period of total disability which results from disease the cause of which originates more than thirty days after the effective date of this policy and which does not necessarily confine the insured continuously within the house, but requires regular treatments by a legally qualified practicing physician or surgeon during such period."

Defendant denied liability generally, and specifically pleaded: (1) That it was incorporated and existing under the terms and provisions of Chapter 6, Art. 4784 et seq., Title 78, Revised Civil Statutes of Texas, 1925, and was a mutual assessment company; (2) that plaintiff's policy lapsed on August 20, 1938, because of the nonpayment of the premium due on that date; that the policy was not reinstated thereafter, and was not in force on September 28, 1938, the date plaintiff's illness originated, or at any time after said lapse; (3) that plaintiff, on September 27, 1938, made a written application for reinstatement, wherein he agreed, among other things, that any premium tendered should not be construed as a reinstatement of the policy until written approval of the company was received by him while he was alive and well; that said reinstatement was not received in its home office until September 30, 1938; that plaintiff's disability, if any, because of illness, originated September 28, 1938, and therefore there was no reinstatement of the policy; that if the court should find that plaintiff's policy was reinstated, then plaintiff's illness originated within fifteen days after the policy was reinstated, and under the terms of the policy, defendant was not liable to plaintiff in any amount.

Defendant contends that the trial court was in error in rendering judgment against it for any amount, because the evidence showed: (1) the policy sued on had lapsed on August 20, 1938, because of plaintiff's failure to pay a quarterly premium due on that date, and was not thereafter reinstated; and hence was not in effect when plaintiff became ill on September 28, 1938; (2) if the policy was in fact reinstated on September 27, 1938, plaintiff was not entitled to recover because, according to his own testimony, he became ill September 28, 1938, and the policy provides that "The company will not be liable for any disability originating within fifteen days after the date of re-instatement."

It is plaintiff's contention that the policy was in force when he became ill on September 28, 1938, because, he says, the evidence raised an issue of fact, impliedly found in his favor by the trial court, that the defendant, on August 22, 1938, unconditionally accepted as payment of the premium then past due plaintiff's check for $14.25, which the evidence shows without dispute to have been dishonored on presentation.

In support of this contention plaintiff introduced in evidence the policy sued on, which, among others, contains the following general provisions:

"(1) The payment of all premiums, after the initial premium, must be made direct to the Home Office, in exchange for an official receipt signed by the Secretary or Assistant Secretary, and payment in any other manner is at the risk of the Insured and is not binding on the Company.

"(13) It is agreed and understood by the Insured that the Company, in accepting checks or drafts as payment for any premium, does so at the request of the Insured and without any responsibility on the part

of the Company except to present same in due course through regular banking channels for collection and that if same be not paid immediately upon such presentation such failure to receive actual payment shall operate to the effect as though no payment had been made and as provided elsewhere herein shall cause the policy to lapse and be of no effect unless and until payment be properly made within the time limit herein given for payment or unless and until reinstated in the manner herein provided," and the following additional provisions:

"(3) The date of monthly premium shall be as indicated from date of issue of Policy, or from date of any re-instatement, without grace. A notice of each premium due hereon will be mailed fifteen days prior to the due date. The Company assumes no responsibility for failure to send such notices, or for non delivery of same. No offer of re-instatement after due date of any premiums shall be held a waiver of this condition. Any premium received after the due date may be accepted as a re-instatement, and upon the representation of the insured being in good health and free from any injury or disease, and in lieu of a health certificate at the time of the Company's acceptance, and the Company will not be liable for any disability originating before the expiration of fifteen days after date of re-instatement.

"(5) The term of this policy begins at 12 o'clock noon, Standard Time, on date of delivery to and acceptance by the Insured against accident and on the thirty-first day thereafter against disease, and ends at 12 o'clock noon on date any renewal is due.

"(6) The time for paying premiums shall be deemed to have expired and the insurance forfeited, if the premium has not been received at the office of the Company by 12 o'clock A. M. Standard Time, on the morning of the first day after the due date, and any re-instatement of this policy shall be optional with the Company."

Plaintiff also introduced the receipt mailed to him by defendant when it received, on August 22nd, his check for $14.-25. The receipt is as follows:

"Aug. 22, 1938

"If check or draft or other instrument on account of which this receipt is given be not paid on presentation, then this receipt shall be void and the premium described herein shall be unpaid, and credit extended on account of such check, draft, or other instrument shall be cancelled.

"We are in receipt of your remittance in the amount of $14.25 which we are accepting according to the terms of Policy No. 369700 as the quarterly payment due August 20, 1938."

It appears that one premium was due on plaintiff's policy on August 20, 1938, to prevent the same from lapsing, and was not paid on that date. The president of the company and its general manager testified that plaintiff's policy lapsed on August 20, 1938, because of his failure to pay the premium then due, but was reinstated on August 22, 1938, when a check for $14.25 was received from plaintiff; that this check, on presentation, was dishonored; was never thereafter paid; and the policy lapsed and was never reinstated. He testified that on receipt of the check the company forwarded to plaintiff the conditional receipt set out above; and that the first day the $14.25 check came back, "I think we advised him (plaintiff) twice by letter that the check had not been paid and that the policy was of no force or value." The plaintiff did not deny receipt of this notification. This witness further testified that on September 30, 1938, there was received in the company's office at Dallas plaintiff's written application for reinstatement of his policy, dated September 27, 1938, accompanied by plaintiff's check dated September 27, 1938, payable to T. S. Camp, an authorized agent of the company, and by him endorsed and made payable to the company, in the sum of $28.50, marked "Not to be deposited until October 1, 1938," to pay the $14.25 premium for which the dishonored check was given and to pay a quarterly premium not then due; that the application for reinstatement was not granted. Plaintiff's application for reinstatement and the receipt given plaintiff for his $28.50 check were introduced and read as follows:

"In accordance with its terms and conditions I hereby apply for re-instatement of the lapsed policy described above, and warrant that I am now in good health and free from any disability, and that I have not had any ailments, diseases or disabilities of any nature since the issuance of my policy except as follows: No disability since lapse.

"It is understood and agreed that this application for re-instatement, if accepted, is to be based on the information given in

my original application on file in the Home Office of the Company, a copy of which is attached to my policy, and on my statements herein. Both the statements made in my original application, as well as the statements contained herein, I warrant are true and correct. I understand and agree that any premium tendered herewith shall not be construed as a re-instatement of my policy until after written notice of approval in accordance with the terms and conditions of my policy has been mailed from the Home Office of the Company, and received by me while alive and free from any disability.

"(Signed) F. B. Stephens

"For Agent's Use Only

"Premium paid with this application $28.50

"T. S. Camp, Company Representative.

"Do not deposit check until 10/1/38."

"Receipt for Application for Reinstatement of Policy in the Commonwealth Casualty and Insurance Company

"September 27, 1938

"Received of F. B. Stephens ———— for a re-instatement premium on lapsed policy in the Commonwealth Casualty and Insurance Company at its Office in Dallas, Texas, which amount I personally agree to refund in the event application is rejected for any reason.

"It is agreed and understood that any premium tendered and represented by this receipt shall not be construed as a reinstatement of the policy until after written notice of approval has been mailed from the Home Office of the Company, and received by the Insured while alive and free from any disability.

"(Signed) T. S. Camp

"To cover check & next instm. prem."

The defendant's president also testified that he deposited this $28.50 check for the first time on October 5, 1938; that it was "run through the bank twice" but was never paid; that he never did return this check to plaintiff but retained the same in his possession until the trial of this case on its merits; that he delivered the $14.25 check to the agent, Camp, for delivery to the plaintiff. He further testified that on November 27, 1938, he received from the plaintiff a postoffice money order for $14.-25, which he retained and handled as a reinstatement until a confidential report was received which revealed that Stephens was ill; and thereupon the money order was

returned to Stephens. He testified that Camp, although an authorized agent of the company, had no authority to extend credit. He further testified that at plaintiff's request he forwarded proofs of disability to the plaintiff; that the first was mailed to plaintiff on October 20, 1938; that another was mailed thereafter; that when he forwarded the proofs of disability to plaintiff, he did not know when plaintiff's disability originated; that so far as he then knew it might have originated prior to August 20, 1938.

A letter admittedly written by plaintiff to defendant's agent was introduced; it reads as follows:

"10/7/38

"Dear Mr. Camp:

"Am sorry but guess that check has jumped back on you. I have been sick since the day you were over here and have had some added expense, and have just been unable to take care of it. Can pay half of it next week and the balance the next week if you can do that, if not it's just my hard luck. Will appreciate very much if you can handle this for me as I hate to lose the policy."

The plaintiff testified that after he mailed his check for $14.25 to the company on August 22, 1938, the same was never returned to him, but that he received therefor the defendant's receipt above set out; that on September 27, 1938, Camp, the agent of the company, came to him in Cleburne and told him that the last check that he had given in payment of his premium, had come back unpaid. Plaintiff then told Camp that he wanted to take the check up so his insurance would be all right. Camp proposed that plaintiff give him a check for $28.50 to cover the check for $14.25 that came back and the next quarterly payment not then due. Plaintiff testified that he informed Camp that he could not pay the $28.50 right then, that he did not have the money. Camp replied that if plaintiff would give him his personal check for that amount, he, Camp, would hold it and pay the company and plaintiff could forward the money to the company in care of Camp. Thereupon plaintiff gave to Camp a check for $28.50, dated September 27, 1938, payable to the order of Camp, marked "Not to be deposited until October 1, 1938," and which the evidence shows was thereafter endorsed by Camp, delivered to the defendant on September 30, 1938, and by defendant retained. Plaintiff

testified that at the time he executed the check for $28.50 he signed the application for reinstatement hereinabove set out; and thereafter received a letter from the company that his policy was reinstated. Plaintiff further testified that when Camp accepted this check, he knew it was not to be presented to the bank. Camp did not testify nor was his absence accounted for.

In support of its judgment for plaintiff, it was necessary for the trial court to have impliedly found as a fact that plaintiff's policy was reinstated on August 22, 1938, and did not thereafter lapse. This finding must necessarily have been predicated on the further finding that defendant unconditionally accepted plaintiff's check dated August 22, 1938, for $14.25 in payment of the premium then past due. In our opinion, the only evidence in the record that will inferentially support such a finding is: (1) plaintiff's testimony that this check was never returned to him by defendant; (2) plaintiff's testimony that defendant's agent Camp, on September 27, 1938, accepted plaintiff's check for $28.50, knowing that the same was not to be deposited until a later date, for the purpose of taking up the $14.25 check which had been dishonored and to pay a premium not then due, under the agreement that he, Camp, would pay the defendant and plaintiff could pay him later; and (3) the testimony of defendant's president that plaintiff's check for $28.50, marked "Not to be deposited until October 1," was received by defendant on September 30, 1938, was not presented for payment until October 5, 1938, and was thereafter run through the bank twice in an effort to collect it; and that the defendant retained this check in its possession until the trial of this case on its merits. These facts standing alone, uncontradicted and unexplained, might perhaps be sufficient to support the implied finding of the trial court that the defendant had unconditionally accepted said check in payment of the premium then past due on plaintiff's policy. However, the probative force of the foregoing evidence is practically destroyed when considered in connection with the other relevant facts bearing on this issue, and which are summarized as follows: The policy provided that defendant, in accepting a check in payment of a premium, did so at the request of the insured, and that if the same was not paid immediately upon presentation, the failure to receive actual payment would operate to the effect as though no payment had been made and cause the policy to lapse and be of no effect, unless payment was properly made within the time limit set forth in the policy, or unless and until the policy was reinstated as provided for therein. The policy further provided that the payment of all premiums after the initial premium must be made direct to the home office, and payment in any other manner was at the risk of the insured and was not binding on the company. It further provided that the time for paying premiums would be deemed to have expired and the insurance forfeited if the premium had not been received at the office of the company by twelve o'clock in the morning of the first day after due date, and that any reinstatement of the policy should be optional with the company. Plaintiff's contention that the evidence shows that these express provisions of the policy were waived by the defendant, and that in spite thereof, the defendant unconditionally accepted his dishonored check in payment of the premium, is refuted by the receipt issued by the defendant for said check and introduced in evidence by plaintiff, which, in almost the exact language of the policy of insurance, expressly provides that if the check should not be paid immediately upon presentation, the receipt would be void, the premium for which it was given would be unpaid, and the credit extended on account of such check would be cancelled. Plaintiff's contention is further refuted by the testimony of defendant's president, which is not denied by plaintiff, that on the first day plaintiff's check was returned dishonored, defendant wrote plaintiff that the check was returned unpaid and the policy was of no effect or value. Plaintiff's contention that his policy did not lapse on August 20, 1938, because defendant unconditionally accepted his check, afterwards dishonored, in payment of the premium then due, is confronted by the fact that on September 27, 1938, plaintiff admittedly signed an application for reinstatement of his policy, wherein it is stated that his policy had lapsed; and is further confronted by the receipt which plaintiff received from defendant's agent for the check he gave at the time he executed the application, and which plaintiff introduced in evidence, wherein it is also stated that plaintiff's policy had lapsed. In reference to this application, plaintiff testified that after he had executed the same he received a letter from defendant

429

-stating that his policy had been reinstated. Plaintiff did not plead, nor did he testify, that he was induced to execute the application for reinstatement by reason of any fraud practiced upon him, or that he executed it while laboring under a mistake of fact. This admission sustaining defendant's defense was binding on plaintiff until explained or its effect nullified by competent evidence. This plaintiff failed to do. Bankers' Life & Loan Ass'n. v. Chase, Tex.Civ.App., 113 S.W.2d 947, writ refused. Plaintiff's letter to defendant's agent, dated October 7, 1938, and hereinabove set out, does not reveal that on that date he had the opinion that his check or checks had been received and accepted unconditionally by the defendant in payment of the premium due on his policy, because, after admitting in the letter that he knew that his check for $28.50 had been dishonored, he said: "Can pay half of it next week and the balance the next week if you can do that, if not, it's just my hard luck."

■ It appears to be the settled law of this state that the mere sending of a check in payment of a premium due on a life insurance policy will not prevent a forfeiture if the check is dishonored on presentation; to prevent forfeiture on dishonor the check must have been unconditionally accepted in payment. Texas Mutual Life Ins. Ass'n v. Tolbert, 134 Tex. 419, 136 S.W.2d 584; Texas Mutual Life Ins. Ass'n v. Smartt, 131 Tex. 227, 114 S.W.2d 528.

■ After carefully reviewing and considering the evidence introduced, we are of the opinion that it was not sufficient to support a finding by the trial court that the defendant unconditionally accepted plaintiff's check for $14.25, or his later check for $28.50, in payment of the premium due by plaintiff on August 20, 1938. If said check or checks were not so unconditionally accepted, then plaintiff's policy lapsed, according to its express provisions, on August 20, 1938, and plaintiff therefore could not recover for an illness which had its origin on September 28, 1938. Defendant's assignments of error above discussed are sustained.

It being unnecessary so to do, we do not pass upon the sufficiency of the evidence to support a finding that the policy was reinstated on September 27, 1938; because, if the policy was so reinstated on that date, then, since plaintiff's illness had its origin on September 28, 1938, plaintiff would not be entitled to recover, because of the provision of the policy which expressly provides that "the company will not be liable for any disability originating before the expiration of fifteen days after date of reinstatement."

The view we take of the case, as above expressed, renders it unnecessary to comment on or discuss the remaining assignments of error.

■ Defendant contends that there is no evidence to support the judgment of the court, and, therefore, if its assignments of error above discussed are sustained, this court should render judgment in its favor. This relief is denied defendant. We are not prepared to say that the facts of this case have been fully developed. Lanford v. Smith, C. J., 128 Tex. 373, 99 S.W.2d 593.

For the errors pointed out, the judgment of the trial court is reversed, and the cause remanded.