# Supreme Court of Texas

No. 22-0238

USAA Casualty Insurance Company,

*Petitioner*,

v.

Sunny Letot, individually and on behalf
of all others similarly situated,

*Respondent*

On Petition for Review from the
Court of Appeals for the Fifth District of Texas

**Argued January 10, 2024**

JUSTICE YOUNG delivered the opinion of the Court.

The district court certified a class of insurance claimants whose automobiles USAA had deemed a "total loss." Sunny Letot, the putative class representative, owned a vintage Mercedes-Benz sedan that was rear-ended by a driver whom USAA insured. USAA concluded that the cost of repair substantially exceeded what the car was worth before the accident and thus told Letot that the sedan was "a total loss" or "salvage." USAA sent Letot checks to cover the car's pre-collision value and eight days of lost use.

USAA's next steps are central to this case. Without waiting to see whether Letot would accept its offer of payment, USAA told the Texas Department of Transportation (TxDOT) that Letot's car was salvage. It did so by sending TxDOT an "Owner Retained Report" (something the parties call an ORR and we call a Report), in which USAA further represented that it had paid a claim on the vehicle.

Letot disagreed with USAA's determinations and never cashed its proffered checks. She claims that USAA's premature filing is what led TxDOT to invalidate her vehicle's regular title, which prevented her from using or selling her sedan. According to Letot, USAA's actions constituted conversion of her car—that is, USAA's wrongful assertion of dominion and control over it. The district court certified a class, whose members were anyone whose car USAA deemed salvage and about whom USAA filed a Report within three days of sending the claimant a check for the salvage vehicle. The class sought injunctive relief and damages.

We conclude that class certification is impermissible in this case. Neither Letot nor any class member has standing to pursue injunctive relief, so Letot cannot litigate an individual claim for an injunction, much less represent a class. Letot does, however, have standing to seek damages. But as to damages, the certified class does not satisfy the requirements of predominance or typicality. Accordingly, we reverse the court of appeals' judgment and remand the case to the trial court to resolve Letot's individual claim.

# I

Letot made a third-party claim with USAA for damage sustained to her 1983 Mercedes-Benz 300SD after an accident involving a USAA

insured. USAA assessed the pre-collision value of her vehicle at $2,568 and the cost to repair it at $8,859. Under Texas law, a vehicle becomes salvage if it "has damage to or is missing a major component part to the extent that the cost of repairs, including parts and labor"—but excluding repainting costs and sales tax on all repairs—"exceeds the actual cash value of the motor vehicle immediately before the damage." Tex. Transp. Code § 501.091(15).

Letot spoke with a USAA claims adjuster on January 15, 2009, and later that day received a letter from USAA stating that her vehicle had been "deemed a total loss." In an effort to resolve her claim, USAA sent Letot checks dated January 20, 2009, totaling $2,738—her car's pre-collision value along with payment for eight days of lost vehicle use. USAA then quickly—the parties contest exactly how quickly, but apparently no more than three days after sending the checks—filed a Report with TxDOT asserting that it had "paid" a claim on what it called Letot's owner-retained salvage motor vehicle.

To Letot, though, it was not just any car that USAA was assessing. Before the accident, she had invested considerable time and resources restoring it. Beyond that, Letot disagreed with USAA's estimates, which she thought grossly undervalued her car. She also suspected that USAA's repair costs were overstated.

But on January 30, TxDOT sent Letot a letter notifying her that USAA had reported that it had paid her claim; the letter also advised her that, under Texas law, "[r]egistration for this vehicle is no longer valid." The letter added that Letot was forbidden from driving the car on public roads and that she "must apply for a Salvage or Nonrepairable Vehicle

3

title prior to selling/transferring the vehicle." Letot returned the uncashed checks to USAA the same day she received the letter. She included further explanation of her disagreement with USAA's actions.

The dispute continued. Nearly two years later, and as Letot's counsel demanded, Letot was vindicated in at least one important sense: USAA filed a correction request to supersede its original Report. USAA represented to TxDOT that it had filed the Report in error because "[t]he damage to the vehicle was not sufficient to classify the vehicle as a salvage motor vehicle." USAA thus asked TxDOT to take the necessary steps so that Letot could "legally operate or transfer ownership of [her] vehicle." USAA has conceded that "[i]t is the general practice of USAA to submit the Owner Retained Reports within three days of authorizing the check" for all claimants "[w]ithin the State of Texas." It is also clear that correction requests are vanishingly rare.

The parties were nonetheless unable to resolve their disagreement without litigation. The correction request, for one thing, apparently came just a bit too late. The details are murky, but it seems that Letot, having been subject to considerable monthly storage costs and unable to legally drive her car because of its erroneous "salvage" status, started disassembling it and eventually sold what was left of it for scrap, netting about $200. Without her car and without satisfaction from USAA, Letot sued on January 4, 2013. About a month later, Letot filed an amended petition and a motion for class certification. She alleged, among other things, that USAA converted her vehicle by filing a Report before she had accepted USAA's offer of payment. According to Letot, USAA exercised unauthorized dominion and control over her property by falsely asserting

4

to TxDOT that it had "paid" a claim on her salvage vehicle, which led TxDOT to invalidate her vehicle's regular title. USAA filed a summary-judgment motion, which the trial court granted. At this stage, the trial court had not yet ruled on Letot's motion for class certification.

The court of appeals reversed in part and remanded several claims for trial, including conversion. *Letot v. USAA*, No. 05-14-01394-CV, 2017 WL 1536501, at *1 (Tex. App.—Dallas Apr. 27, 2017, pet. denied). In the process, the court of appeals rejected USAA's argument that "its tender of an uncertified check to Letot constituted payment of a claim," reasoning that "[f]or an uncertified check to constitute a 'payment,' the check must be both accepted and then honored." *Id*. at *4 (citing *Tex. Mut. Life Ins. Ass'n v. Tolbert*, 136 S.W.2d 584, 589 (Tex. 1940)). The court "conclude[d] [that] USAA did not conclusively establish it paid a claim on Letot's vehicle or, therefore, that it properly filed the Report." *Id*. This Court requested full merits briefing but ultimately denied USAA's petition for review.

The trial court then turned to the class-certification proceedings. Letot's proposed class definition included all claimants to whom USAA sent a check and then, within three days, filed a Report with TxDOT. Pursuant to a court order, USAA manually reviewed more than 500 such claims and determined that "no person or entity from 2014 to November 2019 disputed whether their vehicle constituted a total loss, or rejected the total loss payment made to them by USAA." Letot later amended her class-certification motion to seek certification only on her conversion claim, which is the only claim for damages before us. Letot also filed a proposed trial plan. After the class-certification hearing, she amended

5

her petition (but never amended her class-certification motion) to add a request for injunctive relief.

The trial court certified a class that adopted Letot's class definition, appointed Letot as the class representative, and ordered that the matter be "certified with respect to Plaintiff's . . . conversion claim and its requested remedy of permanent injunctive relief" under Rule 42(b)(2) and (3). It identified seven purportedly common issues of law and fact and concluded that "there are no issues of law or fact that affect only individual members of the class." Letot's proposed plan anticipated that "trial will take less than three days" and suggested a sole liability question regarding whether USAA converted Letot's property. Actual damages, it explained, would be determined after trial "by: (1) using 'salvage value plus' as a measure of damages for each individual; (2) providing testimony as to the average value for the loss of use per individual; and/or (3) using a claim form for each Class Member," but exemplary damages would be "calculated on a Class-wide basis."

USAA again appealed, and the court of appeals affirmed. The court rejected USAA's arguments that the class members all lacked standing; that it was impermissible to certify the class to also seek injunctive relief; and that the class could not satisfy Rule 42's numerosity, commonality, typicality, predominance, and superiority requirements. 684 S.W.3d 443 (Tex. App.—Dallas 2022). USAA again filed a petition for review, and this time we granted it.

## II

Letot seeks to represent the class in pursuing both injunctive relief and damages. A putative class representative like Letot must have

standing to pursue her own claims before she may seek to litigate those of a class. Indeed, "a named plaintiff's lack of individual standing at the time a class action suit is filed deprives the court of subject matter jurisdiction over . . . his claims on behalf of the class." *M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 706 (Tex. 2001). Likewise, a "*claim-by-claim* analysis is necessary to ensure that a particular plaintiff has standing to bring each of his particular claims. . . . We see no reason why the rule should be different whether one plaintiff or many file suit, or whether that suit is brought as an individual or class action." *Heckman v. Williamson County*, 369 S.W.3d 137, 153 (Tex. 2012). Accordingly, we analyze the class-certification order as to injunctive relief and damages in turn, and as to each, we must begin by testing Letot's standing.

## A

Letot may represent a class in seeking an injunction only if she could do so on her own. We conclude that she lacks standing to do so, and we must therefore reverse class certification as to injunctive relief.

"A plaintiff has standing to seek prospective relief," including the equitable remedy of a writ of injunction, "only if he pleads facts establishing an injury that is 'concrete and particularized, actual or imminent, not hypothetical.'" *Garcia v. City of Willis*, 593 S.W.3d 201, 206 (Tex. 2019) (quoting *Heckman*, 369 S.W.3d at 155). "To establish standing based on a perceived threat of injury that has not yet come to pass, the 'threatened injury must be certainly impending to constitute injury in fact'; mere '[a]llegations of possible future injury' are not sufficient." *In re Abbott*, 601 S.W.3d 802, 812 (Tex. 2020) (alteration in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

7

Likewise insufficient, at least without more, are allegations of a *past* injury, which retrospective relief—typically damages—can remedy. Prospective relief, like an injunction, can prevent *future* injuries, but only if a plaintiff first establishes standing (and then satisfies the equitable requirements for an injunction). More precisely, past injuries can be relevant to standing to pursue an injunction—and to getting one on the merits—if the prior injury is sufficiently likely to recur and thus harm the plaintiff. Protective orders, for example, often rely on past conduct to provide prospective relief when there is reason to believe that the danger remains present. Letot's past experience of being subjected to USAA's claim-processing policies for salvage vehicles, in other words, is relevant to her standing to pursue an injunction only if she can show that going through the experience once makes it quite likely that she will go through the same experience again.

Letot cannot make that showing. She has not established, or even alleged, that her past experience increases the likelihood of her being hit *again* by a USAA insured, much less in the imminent future. Traffic accidents will continue, of course, and USAA insures many Texas drivers. But as Letot has acknowledged, both in briefing and at oral argument, *everyone* on the road is equally at risk of being hit by a USAA insured. Letot cannot show that the risk to her is in any way distinct or heightened beyond that of the general public.

But even if she could get past that step, far more is required to establish standing to pursue an injunction about the policy and practices at issue. First, supposing that Letot *was* at heightened risk of an accident that leads to a claim with USAA, an increased risk is not enough. A

future injury must be "certainly impending," or Letot must at least be subject to "a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks omitted). Second, even if it were *certain* that someone USAA insured would again damage a car Letot owned, she would have to show that the damage would lead USAA to deem that car a total loss rather than one that could be repaired. Third, USAA would then have to authorize payment to Letot. And fourth, within three days of approving that payment, USAA would have to alert TxDOT about her car's salvage status via a Report. Given USAA's policy, we could reasonably infer at this stage that the last two steps would follow the others—but nothing makes Letot likely to get even to the first one.

The U.S. Supreme Court's decision in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), illustrates why. Lyons alleged that Los Angeles police officers had subjected him to an illegal chokehold that "render[ed] him unconscious and caus[ed] damage to his larynx." *Id.* at 97–98. The Court agreed that Lyons had standing to seek *damages* for his past injury, but that "[did] nothing to establish a real and immediate threat that he would *again* be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part." *Id.* at 105 (emphasis added). Like Lyons, *see id.*, Letot here argues that USAA *continues* to use what she regards as an unlawful process. Lyons's allegation that the police still—and *routinely*—applied illegal chokeholds did not confer standing on him to pursue prospective relief. *Id.* "Absent a sufficient likelihood that he will again be wronged in a similar way," he was "no

9

more entitled to an injunction *than any other citizen of Los Angeles*." *Id.* at 111 (emphasis added).

If Lyons lacked standing to seek an injunction against alleged police brutality, we do not see how Letot could have standing to enjoin USAA's allegedly unlawful claims-processing policy. Even if Letot alleges a past conversion, just as Lyons alleged past police misconduct, she cannot show any distinct and non-speculative likelihood of a future injury of the same kind she suffered before, much less an *imminent* likelihood.

None of Letot's contrary arguments overcome these principles. She points to Rule 42(b)(2)'s text, which provides that when "the party opposing the class has acted or refused to act on grounds generally applicable to the class . . . final injunctive relief or corresponding declaratory relief with respect to the class as a whole" is appropriate. Tex. R. Civ. P. 42(b)(2). But subject-matter jurisdiction comes first. "[B]efore Rule 42's requirements are considered, a named plaintiff must first satisfy the threshold requirement of individual standing at the time suit is filed, without regard to the class claims." *M.D. Anderson Cancer Ctr.*, 52 S.W.3d at 710. Even assuming that Letot could otherwise satisfy Rule 42(b)(2), it would not matter without a justiciable claim for injunctive relief.

Likewise, we are not persuaded by Letot's contention that USAA has waived the argument that injunctive relief is improper because damages can provide an adequate remedy. This point concerns the merits—whether, if a plaintiff has standing, she is entitled to an injunction. We express no view on whether Letot's waiver contention would carry the day if her claim had been justiciable because her lack of standing means that the merits are beside the point. *See Tex. Ass'n of*

10

*Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993) ("Subject matter jurisdiction is never presumed and cannot be waived.").

Finally, at oral argument, Letot asserted that some class members are themselves USAA insureds. This status, we agree, may make them slightly more likely than Letot or the general public to suffer the experience of having to file a claim for automobile damage and have USAA deem the car to be salvage—they could, for example, cause the crash themselves or be unable to identify who did. Even so, they are no more likely than *anyone* insured by USAA to suffer that experience, whether they had previously had a totaled car or not. After all, like Lyons, having experienced this kind of injury once does not entail a greater risk of experiencing it twice. Neither the absent class members nor others insured by USAA have standing to sue for injunctive relief without satisfying the requirements we discussed above—the *distinct*, *imminent*, and *non-speculative* risk of the series of events that would lead to USAA's deeming a damaged car to be salvage.

Regardless, it is Letot, not an unnamed class member whom USAA insures, who seeks to be the class representative. We doubt that any class member would have standing but we need not resolve that question because, without individual standing to pursue injunctive relief, Letot cannot seek an injunction on behalf of the unnamed class members. *See DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 307 (Tex. 2008). We therefore must reverse the class-certification order as to injunctive relief and render judgment dismissing Letot's individual claim for an injunction for lack of jurisdiction.

11

**B**

We now turn to the certification of the putative class's claim for damages. As before, we begin with Letot's standing. Because we conclude that Letot's individual standing is secure, we then proceed to the merits of the class-certification order.

**1**

USAA contends that Letot's injury is not traceable to USAA's conduct and that she thus lacks standing to seek damages. We disagree.

To satisfy the traceability requirement for standing, a plaintiff must show that there is "a causal connection between the injury and the conduct complained of." *Heckman*, 369 S.W.3d at 154 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). According to USAA, the Transportation Code—not USAA—is what required Letot to surrender her title and prevented her from lawfully driving the car. The Transportation Code makes it an offense when

> [a] person knowingly fails or refuses to surrender a regular certificate of title after the person: (1) *receives a notice from an insurance company that the motor vehicle is a nonrepairable or salvage motor vehicle*; or (2) knows the vehicle has become a nonrepairable motor vehicle or salvage motor vehicle under Section 501.094.

Tex. Transp. Code § 501.102(c) (emphasis added) (now codified as amended as § 501.109(c)). Accordingly, USAA argues, Letot's receipt of notice that USAA deemed her car to be salvage—not whether or when USAA filed a Report—is what triggered the legal disabilities that form the basis of Letot's damages claim.

USAA's argument is not frivolous. We reject it only as to standing

12

without addressing its merits. Even assuming that USAA is correct that the Report was not the legal cause of Letot's inability to drive her car or sell it without the cloud that a "salvage" label brings, those consequences—she has alleged—were still caused *by USAA*. For one thing, Letot stands in a position distinct from others (which will be important when we turn to class certification). USAA filed a correction request with TxDOT, which means that USAA itself has acknowledged to the government that her car never should have been deemed salvage in the first place. Without that error—not just the error of filing the Report, but the error of labeling her car as salvage, which is *why* USAA filed the Report—no "conversion" would have occurred because Letot would have maintained full authority over the car.

If anything, USAA's argument—that the consequences flowed not from the Report but from USAA telling Letot that her car was salvage—*enhances* Letot's standing. That argument highlights that USAA's actions caused the alleged injuries. Any defenses USAA may have to this contention implicate the merits, but they do not affect Letot's standing.

The Report, however, is not entirely irrelevant to standing. Suppose that, instead of sending the Report to TxDOT, USAA had continued to negotiate with Letot about whether it was proper to classify her car as salvage. In that case, any initial "notice" from USAA—like the January 15 letter—would not have sufficiently apprised her of any duty to surrender title. But sending the Report unambiguously conveyed that USAA had made up its mind as to salvage status—telling that to the government is what eliminated any doubt that Letot could not lawfully drive her car. The correction request, again, illustrates the point: USAA

not only told TxDOT that USAA's Report was an error, but asked TxDOT to undo the legal impairments that flowed, at least in a practical sense, from TxDOT's initial receipt of the Report.

We again acknowledge that USAA may have substantial legal, and not just factual, defenses to all this. Public policy and the law may have much to say about when insurers can be liable for claims-processing and government-reporting actions. Deeming a car to be salvage is not a purely private matter, after all, but affects public safety. Such defenses, if any, belong on the merits side of this case. We hold that Letot has alleged an actual injury that was caused by USAA and would be redressed by damages. At this stage, at least, Letot has established standing to pursue her individual claim.

## 2

Because Letot has standing to pursue damages, we turn to class certification. "We review a class certification order for abuse of discretion." *Mosaic Baybrook One, L.P. v. Cessor*, 668 S.W.3d 611, 617 (Tex. 2023) (quoting *Bowden v. Phillips Petroleum Co.*, 247 S.W.3d 690, 696 (Tex. 2008)). "Compliance with Rule 42 must be demonstrated," however, and "cannot merely be presumed." *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 691 (Tex. 2002). "This Court's precedent emphasizes repeatedly that judicial analysis of whether a claim satisfies Rule 42 must be 'meaningful' and 'rigorous.'" *Am. Campus Cmtys., Inc. v. Berry*, 667 S.W.3d 277, 283 (Tex. 2023).

We conclude that the courts below erred in concluding that Letot carried her burden to show that the proposed class can satisfy Rule 42's predominance and typicality requirements. Without addressing USAA's

14

challenges based on Rule 42's other requirements, therefore, we hold that it was an abuse of discretion to certify a damages class.

**a**

We begin with the predominance requirement, under which "the questions of law or fact common to the members of the class [must] predominate over any questions affecting only individual members." Tex. R. Civ. P. 42(b)(3). USAA raises a profusion of arguments that the proposed class cannot satisfy this requirement.

"The test for predominance is not whether common issues outnumber uncommon issues but . . . whether common or individual issues will be the object of most of the efforts of the litigants and the court." *Sw. Refin. Co. v. Bernal*, 22 S.W.3d 425, 434 (Tex. 2000) (internal quotation marks omitted). "If, after common issues are resolved, presenting and resolving individual issues is likely to be an overwhelming or unmanageable task for a single jury, then common issues do not predominate." *Id.*

Individual issues would almost surely overwhelm the common issue of whether USAA exercised dominion and control over class members' property when it filed Reports concerning their vehicles. Notably, the threshold question of standing may itself present an insurmountably individualized inquiry under these circumstances.

After all, our confirmation of Letot's individual standing relies on features that are apparently unique to her. Many class members would likely lack standing. For example, many were seemingly eager for the claim process to move as quickly as it could. Far from outrage that the checks were sent too soon or that USAA quickly notified TxDOT of this

15

"payment" even before the checks were cashed, many reasonable owners would prefer maximum expedition of these processes. Some—perhaps many—likely sought to persuade USAA that their cars were totaled or readily agreed with such a conclusion, hoping to end the process sooner rather than later. USAA points out that the analysis of its records (which it conducted at the trial court's direction upon Letot's request) identified no one except Letot who objected at all to how USAA handled the entire process. Class members like the ones described here would lack standing. It is hard to see how anyone fitting that description could have suffered an *actual injury*, as opposed to merely a theoretical or ephemeral one.

Accordingly, we need not conclude, as USAA urges, that *no* other class members would have standing. Even if we assume that some or indeed many class members were aggrieved in the way Letot was, that is not enough to satisfy the predominance requirement if determining who they are or how many there are would require highly individualized inquiries. In this unusual circumstance, standing itself poses a threat to predominance. We therefore need not resolve the open question of whether every last class member's standing must be affirmatively established before a court may certify a class. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 n.4 (2021) (reserving the same question in federal court). Instead, we hold that the predominance requirement cannot be met when, from the outset, it is clear that substantial variation exists among the class regarding standing.

Predominance issues regarding the merits abound too. We cannot see how there would not be substantial individuation regarding USAA's consent or ratification defenses, which would affect class members who,

16

even if initially aggrieved like Letot, ultimately consented to USAA's practices. Some who seem to have consented may not have done so validly—which only amplifies the individual inquiries that would be necessary. Damages would likely vary wildly too—based not on objective and readily ascertainable data (which, if available, would be a reason to support rather than deny class certification) but on highly fact-dependent circumstances. For example, at a basic level, if the car was still readily drivable, calling it "salvage" and imposing a legal bar to driving it would be far different from calling a car "salvage" when it was not drivable at all. Ultimately, each claimant must prove entitlement to damages before he can recover anything for conversion. *See United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147 (Tex. 1997).

Letot has suggested that a trial resolving the issues common to the class would take less than three days. Perhaps so, for the issues she has identified. But like the trial court, Letot contends there are *no* individual questions. For the reasons we have stated, there is no doubt that plenty of individual questions exist. What matters, though, is whether the common questions will predominate over them. Rule 42(b)(3) does not require USAA to establish that individual issues would predominate—it requires Letot to establish the opposite. She has not made that showing. Far from there *being* no individual issues, it is hard to envision how individual issues would not overwhelm any common ones. These threshold problems are sufficient to eliminate the necessary showing of predominance, so we need not address USAA's additional predominance-focused arguments.

17

**b**

Aside from its predominance issues, this class was improperly certified because of a lack of typicality. "[T]he claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Tex. R. Civ. P. 42(a)(3). "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Sw. Bell Tel. Co. v. Mktg. on Hold Inc.*, 308 S.W.3d 909, 920 (Tex. 2010) (quoting *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007)).

This Court has previously observed that a litigant's claims or defenses, not her individual characteristics, are what affect typicality. *Id.* (noting that "the literal language of [R]ule 42(a) . . . focuses on the '*claims or defenses*' of the class representative"). We reaffirm that understanding. Factual distinctions between a class representative and other class members are inevitable. When those distinctions have nothing to do with any "claims or defenses," they are not material to a court's typicality assessment. On the other hand, "[w]hile typicality does not insist upon a complete identity of claims, it does require that the class representatives' claims 'have the same *essential characteristics* as the claims of the class at large.'" 1 William B. Rubenstein*, Newberg and Rubenstein on Class Actions* § 3:34, at 476–77 (6th ed. 2022) (emphasis added) (quoting *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009)).

When distinctions between a class representative and the class are significant enough to necessarily affect the substance of the legal theory— that is, one's "claims or defenses"—those distinctions are relevant to the

18

typicality analysis. *See, e.g.*, *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 150 (3d Cir. 2008) (holding that typicality was not established where the unique posture of each class member meant "that proposed class members will likely need to pursue different, and possibly conflicting, legal theories to succeed"). The typicality requirement thus "screen[s] out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present." 7A Charles Alan Wright et al., *Federal Practice & Procedure* § 1764, at 323 (4th ed. 2021); *see also, e.g.*, *Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006) ("[W]hen the variation in claims strikes at the heart of the respective causes of actions, we have readily denied class certification.").

Letot's claim does not have the same essential characteristics as the claims of other class members. She is at least atypical, and perhaps even unique, in having objected to the claims process or having declined to cash the checks that USAA had sent. The extremely rare correction request that USAA issued for her but apparently no other class members, or at least very few of them, illustrates the point. Compared to other class members, Letot's distinctive perspective would both materially affect her presentation of her claim and limit USAA's defenses. Letot would present an extremely atypical story for the jury—including that she loved and had carefully restored her vintage car, that she had sought to negotiate with USAA about salvage status, and that she in fact ultimately succeeded in getting that status reversed.

Such a bespoke fact pattern may make Letot a compelling plaintiff in her *own* case. But her unique characteristics cannot reasonably be the

19

basis for a jury to award actual or exemplary damages or make other findings on behalf of an entire class, whose experiences differ starkly from Letot's. The distinctions we have noted—and others—would necessarily and substantially affect Letot's legal theory and how the case was framed. Picking out other class members at random and imagining *them* as class representatives illustrates how much Letot's own circumstances would influence the presentation of the "claims or defenses" of the parties. Letot cannot establish that her claims are typical of the other class members'.

Notably, the typicality requirement sometimes protects absent class members and sometimes protects the defense. Suppose that one of those random class members were selected as class representative and turned out to be an unusually *weak* plaintiff—perhaps someone who enthusiastically urged USAA to speed up the process, who cashed the check as soon as it arrived, who had stated that all she wanted was money to use toward a new vehicle, who did not want to maintain possession of her car, and whose car was undrivable because it had been totally destroyed beyond repair at any cost. Such a class representative would cause the litigation to focus on her atypically flimsy case and thereby undermine the claims of the other class members. *See Hansberry v. Lee*, 311 U.S. 32, 45 (1940) ("[A] selection of representatives for purposes of litigation, whose substantial interests are not necessarily or even probably the same as those whom they are deemed to represent, does not afford that protection to absent parties which due process requires."); *see also Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) ("[C]ommonality and typicality . . . tend to merge," and—at least when protecting the absent class members—both "also tend to merge with the

adequacy-of-representation requirement."). If a class representative of the sort we have hypothesized managed to hurdle the other obstacles of Rule 42, however, the typicality requirement would still protect absent class members from a harmful certification.

Letot as the class representative presents the opposite problem—her claim is atypically strong, not atypically weak. Telling a jury to resolve all class members' claims based on a trial that focused on Letot's unusual attachment to a special car, in which USAA unusually reversed itself by filing a correction request, would create a windfall for all the other class members. None of them would object to being represented by someone like Letot. But it would be deeply unfair to USAA in a class context precisely because Letot's individual experience is so atypical. We reiterate that, to the extent her claims have merit, they are perfectly suited for an individual trial, which is how she should proceed.

### III

The judgment of the court of appeals upholding the class-certification order is reversed. Letot's claim for injunctive relief is dismissed for lack of jurisdiction. The case is remanded to the district court for further proceedings on Letot's individual claim for damages.

Evan A. Young
Justice

**OPINION DELIVERED:** May 24, 2024

21