# JULY, 1948

MRS. MILDRED HOOVER ET AL V. GENERAL CRUDE OIL COMPANY.

No. A-1543. Decided May 26, 1948.
Rehearing overruled July 7, 1948.
(212 S. W., 2d Series, 140.)

*Ewing Werlein, Vinson, Elkins, Weems & Francis, Wm. A. Vinson, C. E. Bryson, W. H. Francis, Jr.,* all of Houston, for petitioners.

It was error for the Court of Civil Appeals to hold that under the evidence offered on the trial of the case that the trial court

was not in error in withdrawing the case from the jury and rendering judgment against the petitioners at the close of their testimony. Ryan v. Kent, 36 S. W. (2d) 1007; Irwin v. United States, 57 U. S. (16 How.) 513, 14 L. Ed. 1038; Rio Bravo Oil Co. v. Weed, 121 Texas 427, 50 S. W. (2d) 1080.

*Andrews, Kurth, Campbell & Bradley, W. M. Streetman* and *Raymond A. Cook,* all of Houston, for respondents.

In respondent to the proposition of petitioners. W. T. Waggoner Estate v. Sigler Oil Co., 118 Texas 509, 19 S. W. (2d) 27; Gulf Production Co. v. Kishi, 129 Texas 487, 103 S. W. (2d) 965; Terrell v. Munger Farm Co., 129 S. W. (2d) 407.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

This is an action instituted by petitioners against respondent for a declaratory judgment under Article 2523-1, Vernon's Annotated Civil Statutes, to determine the validity of an oil and gas lease executed by the substituted trustees under the will of Thomas E. Davis to John S. Hoover. At the close of petitioners' evidence the respondent's motion for an instructed verdict was granted, the jury discharged, and judgment rendered that all relief sought by petitioners be denied. The Court of Civil Appeals, one justice dissenting, affirmed the trial court's judgment. 206 S. W. (2d) 139. In view of the fact of a peremptory instruction we shall state the facts as testified to by petitioners' witnesses, just as though they had been found by the trial court.

The lease was dated November 22, 1928, and amended by agreement of the parties on May 29, 1929. It covered the whole of the Kokernot League of approximately 4400 acres of land situated in Harris and Liberty Counties. In November, 1928, the original lessee, John S. Hoover, assigned the lease in so far as it covered 805.9 acres out of the southeast corner of the Kokernot League to Union Exploration Company. By mesne conveyances the lease in so far as it covered that portion of the land passed to respondent, General Crude Oil Company, which company complied with a drilling obligation contained in the lease by the drilling of an exploratory well on the 805.9-acre tract. That well was completed as a producer on December 9, 1929, and thereafter the respondent conducted drilling operations on the 805.9-acre tract, and by July of 1943 had drilled in all thirty wells on that tract. The majority of those wells are still producing oil and gas in paying quantities.

Only two wells have been drilled on that portion of the lease retained by Hoover. One of these wells was drilled in 1936 by the Crown Central Petroleum Company to a depth of 6359 feet and was abandoned as a dry hole. A second well was drilled in 1943 by the Atlantic Oil and Refining Company to a depth of 10,505 feet and was likewise abandoned as a dry hole. The provisions of the lease with respect to development and forfeiture deemed material under the view which we entertain of this case are as follows:

"THIRD.—In the event that oil or gas are found in paying quantities on the said premises and Lessee shall and will thereafter prosecute continuously the drilling of wells with due diligence so as to produce and take from the said premises as promptly as possible the greatest amount of oil and gas possible. All such wells and all operations hereunder to be drilled, sunk, operated, prosecuted and carried on according to the approved methods to produce and sell promptly and continuously the greatest amount of oil and gas and so conducted as not to unnecessarily injure or impair the value of any minerals or interests not covered hereby, the right to develop and explore the premises for any minerals other than oil and gas in the usual and proper manner without unnecessarily interfering with the operations of Lessee is hereby specifically reserved to the Lessors; * * *"

Paragraph FIFTH of said lease reads as follows:

"FIFTH.—In the event that Lessee shall fail or omit to commence the drilling of a well on or before June 1, 1929, as herein provided or shall fail or omit to diligently prosecute drilling operations within the time or times herein mentioned or to comply with all or any of the provisions hereof and the expiration of ninety days thereafter then, and in such case, or cases, or any of them, all rights of the Lessee hereunder shall at the option of the Lessor cease and determine and these presents be deemed terminated without releasing the Lessee from liability for damages or otherwise by reason of the breakage by the Lessee of all or any of the provisions hereof, excepting only that the Lessee shall retain the right to operate on the royalty basis above referred to any well or wells then producing oil or gas in paying quantities so long as oil or gas in paying quantities is produced therefrom by the Lessee."

On December 12, 1944, respondent purchased from the trustees of the Davis estate all of the oil and gas in and under the whole Kokernot League, subject to any and all valid leases. Pe-

titioners were not notified of this purchase, and respondent asserted no right of forfeiture at that time. Early in 1945 petitioners entered into a tentative contract with Phillips Petroleum Company under the terms of which that company agreed to drill a deep test well on that part of the lease owned by them or on an adjoining tract. There is testimony to the effect that had the contract been consummated, Phillips Petroleum Company would have drilled the first well on the 3600-acre lease owned by the petitioners. Upon examining the title to the lease, Phillips Petroleum Company made the requirement that respondent, General Cude Oil Company, as the then owner of the reversionary mineral estate, ratify the lease owned by petitioners. It was at that time that petitioners learned that respondent had purchased the mineral estate under the Kokernot League. When respondent refused to ratify petitioners' lease, the Phillips Petroleum Company broke off negotiations with petitioners. While it is not contended that the respondent owed the legal duty to ratify or confirm the lease, still its conduct was of such character as to authorize the bringing of this action for a declaratory judgment. During the negotiations with Phillips Petroleum Company respondent did not declare that it had forfeited the lease, but it did warn a representative of the company that it "might snatch the rug out from under" the company.

The respondent filed several answers in the case. In the first three answers it set up that petitioners had no title to the leasehold interest in question. It was not until the fourth amended original answer was filed by the respondent that it undertook to declare the forfeiture of the leasehold interest. In subsequent amendments the same declarations of forfeiture were made. In February, 1945, prior to the negotiations by petitioners with the Phillips Petroleum Company, and in apparent recognition of the validity of the lease of petitioners, the respondent sent an agent to petitioners who sought to make an arrangement with petitioners for the development by respondent of the 3600-acre tract. Proposals and counter proposals were made, but no agreement was reached, and the matter was dropped.

Under the above facts the controlling question is whether or not the respondent had the right to declare a forfeiture of the lease, as it undertook to do in its fourth amended original answer, without notifying the petitioners of its intention to forfeit and affording them a reasonable opportunity to comply with the drilling obligations of the lease.

It is disclosed by the record that in November, 1942, the lessors, with full knowledge of the development which had been made on the lease both by the petitioners and the respondent, as an inducement to the drilling of a deep test well by Atlantic Refining Company on that part of the lease owned by the petitioners, agreed in writing that the covenants of the lease with reference to development had been performed up to that time. That agreement was made with full knowledge of the fact that there had been a discontinuance of drilling operations for over ninety days many times in the past by both the petitioners and the respondent.

Respondent cannot be heard to say that the lease had become forfeited in December, 1944, when it purchased the mineral estate from original lessors, subject to any valid lease. All of its operations had been conducted as an assignee of a portion of the lease. The lessors alone, if anyone, had the right at that time to declare a forfeiture and they had not undertaken to exercise that right. On the contrary they had pursued a course of conduct inconsistent with forfeiture.

Respondent purchased the mineral estate in the Kokernot League, subject to all valid leases. Up to that date no attempt had been made by the lessors to forfeit the lease, and there is no proof in the record that any other lease had been executed upon any portion of that league. Then after purchasing the mineral estate respondent not only did not notify petitioners of its intention to declare a forfeiture of the lease, but two months later, in February, 1945, it actually sought to make arrangements with petitioners for the development by it of the 3600-acre tract. Obviously, that course of conduct was inconsistent with the claim of forfeiture.

■ The relation between parties to this litigation, though not strictly analogous to that existing between a vendor and a purchaser under an executory contract for sale of land, is comparable thereto in so far as it relates to the question here for decision. If in such case a vendor by his own conduct creates a situation in which a summary declaration of a forfeiture would be unjust to the vendee, then a court of equity will require that the vendor notify the vendee of his intention to forfeit the contract if payment is not made within a reasonable time before a valid forfeiture may be declared. Tom v. Wollhoefer, 61 Texas 227; Thompson v. Robinson, 93 Texas 165, 54 S. W. 243; West Lumber Co. v. Henderson (Tex. Civ. App.), 238 S. W. 710. The

question is annotated in 107 A. L. R. 345. That rule has been applied in cases involving oil and gas leases. Wisdom v. Minchen (Tex. Civ. App.), 154 S. W. (2d) 330 (Error Refused, Want of Merit) ; New American Oil & Mining Co. v. Troyer, 166 Ind. 402, 76 N. E. 253, 77 N. E. 739; Daly v. Long, 290 Fed. 187; Campbell v. Rock Oil Co., 151 Fed. 191; Thornton, Oil and Gas, Vol. II, p. 519; 31A Tex. Jur., secs. 194, 195. This case falls well within that general rule.

■ Respondent will not be heard to assert its right to declare a forfeiture up to the time it negotiated with petitioners for the development of the lease in February, 1945. Petitioners had the right to assume that they could negotiate for the development of the lease. They exercised that right and entered into such negotiations with Phillips Petroleum Company, and it would be manifestly inequitable for the respondent suddenly to turn about and declare a forfeiture, without notice and without giving them a reasonable time within which to comply with the requirements of the lease. The declaration of forfeiture made for the first time in respondent's fourth amended original answer amounts to no declaration at all, since the lease was in litigation and respondent was contesting its validity.

We have assumed that the above facts are the true facts in this case. This in view of the fact that a peremptory instruction was given in the trial court. But since respondent has not presented any evidence, it will be understood that all fact issue must be decided upon another trial. We have stated our views of the law on the record as presented.

The judgments of both courts below are reversed and the cause remanded to the district court.

Opinion delivered May 26, 1948.

Rehearing overruled July 7, 1948.