## POWELL v. AMERICAN CASUALTY & LIFE CO.

No. 14482.

Court of Civil Appeals of Texas. Dallas.

May 9, 1952.

On Rehearing June 6, 1952.

Second Motion for Rehearing Denied June 27, 1952.

Clifford Craig, Dallas, for appellant.

Malone, Lipscomb & Seay, Dallas, for appellee.

YOUNG, Justice.

Appellant's suit in trial court was upon a life, sick and accident policy of insurance,

claiming a liability thereunder for monthly benefits (sickness and hospitalization in the aggregate sum of $5,000), to which cause of action certain defenses were raised. Upon trial and jury verdict, a "take nothing" judgment was rendered, followed by plaintiff's appeal.

Appellee Company alleges issuance and delivery of the policy in question of date December 13, 1946, both parties affirmatively relying upon many of its terms and provisions. It is the claim of plaintiff that he became ill on or about July 18, 1947 and has continuously suffered from a disease in nature of tuberculosis, thereby becoming entitled to policy benefits; with timely notice to the Company, request for proofs of loss which were refused along with denial of liability and assertion by insurer that the policy had been cancelled the preceding April. Following a general denial, defendant answered in effect that on date of policy issuance, plaintiff was one of its agents, making application for insurance upon his own life (being policy in suit, No. 6791 MAA, premium $87.00), taking credit for $30 as part payment thereof, same being the amount of his commission; that he had attached to the application two postdated checks for balance due of $28.50 each which were rejected at the Bank for want of sufficient funds, and accordingly claimant had been notified on April 16, 1947 of policy lapse for nonpayment of initial premium. Along with alternative pleas, the Company further pled that if plaintiff was suffering from tuberculosis as alleged, that "such tuberculosis did not originate more than thirty days after December 13, 1946, but had its origin prior to that time, and hence is not covered by said policy."

Matters chiefly in controversy between the parties under their pleadings and testimony are reflected in the following jury answers: In substance, (1) that the sickness of Powell in 1947 was such as to necessarily cause total disability and loss of time; (2) the cause of such sickness *did not* originate after January 12, 1947; (3) such total disability and loss of time continued for a period of thirty months; (4) George Lee (allegedly a general agent of appellee) agreed to pay premiums on the policy in

suit for plaintiff Powell out of renewals earned by said Powell; (5) said Lee did not have the authority to make such agreement on behalf of American Casualty & Life Company; (issues and answers 7, 8, 8a and 9 relate to timely demand of Powell for claim blanks and defendant's denial of liability—not material to this appeal); (6) plaintiff's check, postdated as of 2/13/47, was returned by the Bank for insufficient funds; (7) plaintiff did not receive the Company letter of February 24, advising him said check had been returned, nor defendant's letter of March 12, but did receive the further letter of April 16, 1947.

The application for policy, signed by appellant and wife, made a part of the contract of insurance, provided in part: "We further agree, if any concealments, misrepresentations, false or untrue statements as to health or physical condition, material to the acceptance of our application have been made herein, or if we are not alive and in good health on the effective date of the policy herein applied for, then in consequence of same the Policy and this Application shall become null and void within the contestable period and no liability shall rest upon or be assumed by the Company except the refund in full of the premium collected. * * *"; the policy in question containing the same requirement of good health on date of issuance. The insuring clause of said policy provided expressly: "Against loss of life, limb, sight or disability, resulting directly and independently of all other causes from bodily injuries sustained through purely accidental means while this policy is in force and against disability on account of disease, the cause of which originates more than thirty days after the date hereof, respectively, subject however to all the provisions and limitations hereinafter contained." Further contract recitals material hereto are stated: "If this policy, or the receipt for any initial or renewal premium hereunder, be issued in consideration of a check or draft which is not honored when presented at the Bank upon which it is drawn, then this policy and such receipt shall be void and of no effect unless and until payment has been properly made in cash to the Company with-

in the time limit provided herein. * * * This policy is issued in consideration of the statements made by the Insured in the application herefor, a copy of which is attached hereto and is hereby made a part hereof; and of the payment in advance of the initial premium herefor which shall continue this policy in force for a period of Twelve months from the date hereof, and of the further payment of the renewal premium on or before the date of expiration of grace period."

Also reflected in briefs, pleadings of the parties and undisputed testimony, are the following facts: That said Powell was a Company solicitor, making personal application for this policy of insurance, taking credit for the commission due him thereon of $30 as cash paid; attaching to the application two postdated checks on Company forms of $28.50 each, representing the balance due; that neither of said checks was ever paid or redeemed; plaintiff admitting nonpayment in such connection and receipt of letter from the Company dated April 16, 1947, reading: "Re: Policy No. 6791 MAA Dear Mr. Powell: Enclosed is the form check which we were holding to cover the $28.50 installment which would have been due March 13, 1947 under Policy No. 6791 MAA. Your policy has lapsed for nonpayment of the premium. Should you at any time in the future wish to apply for reinstatement of this insurance, we shall be pleased to hear from you"; that plaintiff made no reply to such letter, filing claim thereafter for disability beginning July 18, 1947,—subject matter of the present suit.

In point 1 (and related points 3, 18, 19, 20, 21, 22, 23 and 24), appellant earnestly argues that the policy and application therefor constitute the entire contract between the parties; same reciting that "This policy is issued in consideration * * * of the payment in advance of the initial premium herefor which shall continue this policy in force for a period of twelve months from the date hereof * * *"; perforce of which appellee is estopped or precluded from asserting lapse of policy because of nonpayment of these postdated checks, absent any affirmative allegations of fraud, accident and mistake. We overrule the various contentions. Testimony concerning these checks was not inconsistent with the policy as a whole; they merely evidencing a basis of credit on which the policy issued; and subject to the further contract provision of which appellant had full knowledge, that "If this policy, or the receipt for any *initial* or renewal premium hereunder, be issued in consideration of a check or draft which is not honored when presented at the Bank upon which it is drawn, then this policy and such receipt shall be void and of no effect unless and until payment has been properly made in cash to the Company within the time limit provided herein." (Emphasis ours.) In view of the provision just quoted and of appellee's letter of April 16, it cannot be said that these checks were unconditionally accepted in payment of premium, or that the Company was in any wise estopped from enforcing the contract as written. A similar contention was overruled in Liverpool & London & Globe Ins. Co., etc., v. Baggett, Tex.Civ.App., 275 S.W. 313, 316, 115 Tex. 144, 277 S.W. 78, writ refused on closely analogous facts; the Court holding in part: "We do not consider the recital quoted as a receipt for the premium, but merely as indicating the amount required to pay for the amount of the insurance therein set out. As between the insurance company and Baggett no estoppel can apply. One of the essential elements of estoppel is that the party asserting it must have been misled or caused to change his position to his injury. Baggett could not complain of this. He knew he had paid cash on his premium only for the first year. For the remaining two years of the premium he had only given his notes, which were long past due, and which he knew he had not paid. Failure to pay these notes when due was a failure to pay the balance of the premium for those years. Duncan v. United Mutual Fire Ins. Co., 113 Tex. 305, 254 S.W. 1101, and cases there cited. To that extent the consideration for the policy had failed, a fact which he well knew. Hence the insurance company was not estopped to show its suspension." See, also, Texas Mutual Life Ins. Ass'n v. Smartt, 131 Tex. 227, 114 S.W.2d 528; Texas Mutual Life Ins. Ass'n v. Tolbert,

134 Tex. 419, 136 S.W.2d 584; Minnesota Mutual Life Ins. Co. v. McIntosh, Tex.Civ. App., 126 S.W.2d 1031; Humphries v. Colorado Life Co., Tex.Civ.App., 170 S.W.2d 315, writ refused.

■■ Aside from the points just under discussion, the issues of controlling importance arise from appellant's alternative plea of an agreement with appellee's agent Lee to pay the policy premium (inclusive of postdated checks) out of renewals earned by said Powell (issue 5), on the one hand, and appellee's defense on the other, that the cause of plaintiff's disability originated prior to issuance of the policy and hence was not covered thereby. We will first consider the issue just mentioned, appearing as No. 2 in the court's charge, to which the jury answered "No," and reading: "Do you find from a preponderance of the evidence that the cause of such sickness originated after January 12, 1947?" Said issue involved an exception to liability contained in the policy; and defendant, having pled the exception in compliance with Rule 94, Texas Civil Procedure, it was plaintiff's burden to establish that his tubercular condition began not sooner than January 12, 1947. 24 Tex.Jur., p. 1248; Sublett v. American National Ins. Co., Tex.Civ.App., 230 S.W.2d 601. Appellant admits the propriety of such a burden, but vigorously argues that the jury's negative finding was without support in admissible testimony, or at least overwhelmingly against the weight and preponderance thereof. His contentions through various points to such effect are twofold. First, that evidence bearing on the issue should at least have been limited to the 30-day period following December 13, 1946 (date of policy) because both application and policy carried the statement that the insurance was to become effective only if the insured was alive and in good health on said date; that said policy provision was not challenged by defendant, either in pleading or proof, thereby becoming an admission of good health on said date; and thus the introduction of any testimony concerning his condition of health prior thereto was foreclosed. Appellee is not here seeking to *rescind* the policy because of alleged mirepresentations

made by Powell relative to his health; but to the contrary, is *relying* on the terms thereof in the assertion that plaintiff's disability is not within its coverage. These affirmative defenses being independent and unrelated, defendant was left free to establish by any relevant facts the negative of issue No. 2, i.e., that the cause of such sickness originated *prior* to January 12, 1947.

■ Moreover, appellee's failure to directly attack the contract proviso of good health cannot serve to limit its field of inquiry involving issue No. 2, to the month following December 13, 1946; for to do so would be tantamount to an extension of the protection contained in the policy by a process of waiver or ' estoppel. " 'Estoppel' does not in itself give cause of action or create new rights, but preserves rights previously acquired." Massachusetts Bonding & Ins. Co. v. Dallas Steam Laundry & Dye Works, · Tex.Civ.App., 85 S.W.2d 937, syl. 4 writ ref.; Southland Life Ins. Co. v. Vela, 147 Tex. 478, 217 S.W.2d 660. "It is well settled that conditions going to the coverage or scope of the policy, as distinguished from those furnishing a ground for forfeiture, may not be waived by implication from conduct or action, without an express agreement to that effect supported by a new consideration." Editor's note to 113 A.L.R., Annotations, p. 858, following report of Washington National Ins. Co. v. Craddock, 130 Tex. 251, 109 S.W.2d 165, 113 A.L.R. 854.

■ Secondly, the evidence bearing on issue 2, though sharply disputed, sufficiently supports the jury finding, adverse to plaintiff, that the cause of sickness in fact had its origin prior to issuance of this policy. State of the evidence relative thereto will be outlined: From plaintiff's standpoint, the illness on which claim of liability is based began July 18, 1947, when he noticed blood in sputum upon coughing, indicative of a lung hemorrhage; at once calling a chest specialist, Dr. Carman, then undergoing physical examination, X-rays, and confinement to bed for several months under doctor's orders; that he entered Woodlawn Hospital, tuberculosis ward, in October

1947, remaining there 19 months, then going home, but continuously receiving medical treatment until October 1950, when he returned to work. He stated that from date of policy until April 1947, when he left defendant's employ, his health was good, physical condition normal; all the while selling insurance with no evidence of tuberculosis until July,—date of hemorrhage. On cross examination, however, Powell admitted to beginning to lose weight before such time, and coughing pretty hard; testifying to prior family and personal history as follows: That his mother died in 1936 of tuberculosis; that he was admitted to the State Tuberculosis Sanitarium, near San Angelo, later that year, and discharged some five weeks thereafter for violation of rules; that he then came to Dallas, was at once examined by Dr. Carman with periodic check-ups, working for several years as "soda jerker" in drugstores, later beginning sale of insurance. Recalled for further cross examination, Powell admitted that he had been rejected for Army service in 1943 because of scar tissue on lungs; that during that year he had to quit his work at the Red River Arsenal near Texarkana and go to bed for two or three months on advice of a private doctor, and that Dr. Carman had told him (from a reading of the July 1947 X-ray film) that he had a hole in left lung "as big as a silver dollar." His medical chart in evidence from State Tuberculosis Sanitarium, entrance date November 19, 1936, showed a diagnosis of chronic pulmonary tuberculosis and "Roughened breath sounds over hilar region c Broncho vesicular breath sounds over rt. apex"; Dr. Anderson, attending physician, describing his condition as "Moderately advanced."

Additional basis for a defendant's judgment is seen in the jury finding (issue 6) that the agreement of Interstate Agency through George Lee to pay these postdated checks from plaintiff's renewals, was not authorized by appellee. In this connection, Agency records in evidence clearly indicate that no renewals were due plaintiff during the period from December 1946 through April 1947, he being largely overdrawn and in arrears by reason of cash advances. Ap-

pellant counters such state of the record, arguing that George Lee was conclusively proved to be a general agent of the Insurance Company and thus authorized to make the agreement regarding renewals as a matter of law; also that the Company records reflected sufficient monies due plaintiff during the period to cover these unpaid checks, irrespective of the state of the latter's accounts with Interstate Agency, and that under authority of Timmerman v. Bankers' Reserve Life Co., 122 Tex. 603, 63 S.W.2d 687, it was the duty of the Insurance Company to apply said balance to payment of premium and thereby avoid a forfeiture. However, in view of our conclusions heretofore reached, it is deemed unnecessary to extend this opinion by way of discussion of the questions just raised.

There being evidence of probative force in support of the jury finding that the cause of Powell's illness did not originate after January 12, 1947, a defendant's judgment in consequence must be affirmed

## On Rehearing.

Appellant challenges the following statement in original opinion as without support in the record: "On cross examination, however, Powell admitted to beginning to lose weight before such time (July 1947), and coughing pretty hard." The finding in question has ample basis in the testimony of Powell as shown on pp. 66, 67, Statement of facts: "Q. Now, it is a fact, is it not, Mr. Powell, that for several months prior to that time you had been losing weight and coughing pretty hard? A. For some time, yes, sir. I don't remember just how long it was. Q. Didn't that condition exist for several months prior to July 18, 1947? A. About two or three months, I would say. Q. For about two or three months you had been losing considerable weight and coughing pretty hard? A. Yes, sir."

In fairness to appellant, however, his further testimony on redirect examination should be quoted in full: "Q. I believe you say the Selective Service turned you down because you had a scar tissue? A. Yes, sir. Q. And that was, you think, in 1944? A. If I am not mistaken, it was

in March, 1943. Q. Did they tell you you had tuberculosis? A. No, sir, they told me I definitely did not have tuberculosis."

Otherwise, the motion for rehearing is in all things overruled.