**Lois B. WOOD, Appellant,**

v.

**AMERICAN SECURITY LIFE INS. CO.,**
Appellee.

No. 15233.

Court of Civil Appeals of Texas.

Dallas.

May 24, 1957.

Rehearing Denied July 17, 1957.

Harvey C. Ford and W. A. McLaughlin, Dallas, for appellant.

Joe Bailey Humphreys, Dallas, for appellee.

YOUNG, Justice.

Suit in trial court was by Mrs. Wood on a Hospital and Surgical Expense Policy issued by defendant Company, wherein she sought to be indemnified for detailed items of expense incident to hospital confinement and surgery. Upon trial and after plaintiff had rested her case, the court discharged the jury and entered a take nothing judgment on motion of defendant, which ruling becomes the subject of this appeal.

Effective date of the policy was May 1, 1952, premium $64.30 annually. The items sued for as being within coverage of same, were incurred in February 1955, and consisted of the following:

"Surgeon fees for operation    $100.00
Six days in Baylor Hospital      60.00
Laboratory Service Fees          10.00·
Operating Room                   36.00
Anesthetics                      25.00
Drugs                            12.50
Ambulance Service                 5.00
    A total of                 $248.50"

Defendant had denied liability, pleading certain conditions of the policy, plaintiff also suing for statutory penalty and attorney's fee; it having been stipulated during the trial that in event of liability, above items were reasonable and customary charges as per policy schedule.

Material here, the policy provisions were as follows: "American Security Life Insurance Company, * * * a Legal Reserve Stock Company * * * hereby insures the applicant, first named in the following Schedule A, hereinafter called the Insured, and will pay, subject to all provisions and limitations herein contained, the indemnity provided herein for loss of life, limb or sight resulting from accidental bodily injury sustained while this Policy is in force, and the benefits provided herein for expense of hospital confinement commencing while this Policy is in force and other specified expenses incurred while this Policy is in force on account of the Insured and the dependent members of the Insured's family, if any, named in said Schedule (all of whom, including the Insured, are hereinafter called the Family Group). (a) Resulting from accidental bodily injury sustained while this Policy is in force, hereinafter referred to as such injury; and (b) resulting from sickness the cause of which originates while this Policy is in force and more than fifteen days after the date hereof, hereinafter referred to as such sickness; * * *." Then follows Schedule A (Part One) "Hospital Expense Benefits. If the insured or any member of the Family Group shall be necessarily confined within a recognized hospital as a resident patient on account of such injury or such sickness, the Company will pay the Insured (or the Hospital if authorized by the Insured to do so) for the following items of hospital expense actually incurred by the Insured or member

of the Family Group, or incurred in behalf of the Insured or member of the Family Group by any Workmen's Compensation insurance company, but not to exceed the amounts stated below: * * * (Part Two) Schedule of Operations * * * Abdomen, appendectomy, or other cutting through abdominal wall for diagnosis, treatment or removal of organs in abdominal cavity (unless otherwise specified herein) $100.00."

■ Appellant's points are lengthy and somewhat repetitious; being generally presented in the following statement from her brief: "that she established her cause of action when she introduced the insurance policy in question and proved up her hospitalization expenses and surgical expenses * * * and the demand for payment thereof and the insurer's denial of all liability, and then the burden was upon the insurance company to prove that the plaintiff's disability was caused from a sickness or a condition which originated before the date of the policy; that the burden was not upon her to prove good health"; arguing further that although the burden was upon defendant to show a lack of good health on date of policy, the fact of good health up to January 1955 was proven by all witnesses, both lay and medical; and the trial court erred in discharging the jury and rendering a defendant's judgment. Defendant on the other hand challenges the general position taken by plaintiff; asserting with equal vigor that "the proof offered by appellant falls short of making a jury question." In such connection we must view the evidence in a light most favorable to the losing party; in other words, that where the verdict is instructed in favor of defendant at the close of plaintiff's evidence, the court will assume that the facts shown by plaintiff's evidence are true. Hoover v. General Crude Oil Co., 147 Tex. 89, 212 S.W.2d 140.

Lois Wood, a nurse by profession, was fifty years of age on date of policy; testifying to the following, in substance, in support of claim: That in January 1955, while lifting a patient, she had suffered a strain, with pain and soreness in lower abdomen which persisted, with symptoms of hernia; going to Dr. Marcus Seely, a licensed practicing physician, in February, for treatment, that her condition becoming more painful Dr. Seely advised hospitalization and surgery, committing her to Baylor Hospital where she remained from February 20 to February 26, 1955. The operation was exploratory in character; a cutting through the abdominal wall, and removal of excess tissues, liberating adhesions, excising of fatty tissues and removal of fatty tumor, left thigh. This hospitalization, surgery, etc., is reflected in the items sued for ($248.-50), though plaintiff testified that the actual expense therefor was more.

In 1942 Mrs. Wood had undergone a hysterectomy while living in Pine Bluff, Arkansas; testifying to a recovery after six or seven weeks; continuing to work while there and during her Dallas residence until the January episode of injury and sickness; that she was in sound health before issuance of policy, May 1, 1952, and afterwards for more than two years and eight months; having lost no time from duties of nursing except in May 1954, at Baylor Hospital, when she was hospitalized for 48 hours, "brought on by sheer exhaustion." Two other witnesses attested to the good health of plaintiff and that she had worked daily before and after the date of policy.

Dr. Marcus Seely testified in substance that he had known Mrs. Wood for fifteen years, she appearing to be a healthy woman during the past four or five years; that he had examined her in February 1955, she giving a history of unusual strain from lifting a patient the previous January. At the time of examination she had lost considerable weight through dieting—230 to 203 lbs.; advising hospitalization and surgery for a probable rupture "through a previous incisional scar." He had operated on February 22; on direct examination stating the result to be: "The hernia was repaired and a section of the pendulous fatty tissue of the abdominal walls was removed. Also, a lipoma was removed from the left thigh.

That was the extent of the operation." Dr. Seely also said that the condition of Mrs. Wood pursuant to which the operation was performed "came about in January, 1955."

On cross-examination of Dr. Seely, defense counsel placed in evidence his written report made at Baylor Hospital at time of the operation, disclosing no condition of hernia or its repair; the witness admitting that he had erroneously made such statement in direct testimony. Dr. Seely was further questioned by the defense on basis of said operative report; and it is the position of defendant that the testimony so elicited disclosed conclusively the non-existence of any jury question; the trial court having correctly rendered judgment adverse to plaintiff's claim. Said medical testimony, defendant argues, clearly demonstrates (1) that the "cause" of plaintiff's condition (sickness) originated some nine years prior to the policy date and thirteen or fourteen years prior to the surgery of 1955; (2) that at most the cause of sickness was mere speculation; (3) that Dr. Seely did not know himself what was wrong with plaintiff when he made the incision; and (4) that neither plaintiff's confinement nor the resulting items of expense were necessary.

■■ The contract declared upon is one of indemnity. Washington Nat. Life Ins. Co. v. Fincher, Tex.Civ.App., 157 S.W.2d 164. The rule to be followed relative to plaintiff's cause of action, therefore, is stated in Travelers' Ins. Co. v. Harris, Tex. Com.App., 212 S.W. 933, and International Travelers' Ass'n v. Marshall, 131 Tex. 258, 114 S.W.2d 851, rather than in Hutcherson v. Sovereign Camp, W. O. W., 112 Tex. 551, 251 S.W. 491. Defendant, pursuant to Rule 94, Texas Rules of Civil Procedure, having pled exceptions of the policy in limitation of its liability, the burden then rested upon assured both to allege and prove that the loss sustained was a hazard under terms of the contract and its requirements. American Cas. & Life Co. v. Butler, Tex.Civ. App., 215 S.W.2d 392; Republic Cas. Co. v. Mayfield, Tex.Civ.App., 251 S.W.2d 764;

Powell v. American Cas. & Life Co., Tex. Civ.App., 250 S.W.2d 744. Accordingly the issues apparent on face of the policy, of which plaintiff had the affirmative burden, comprehended at least the following: (1) That she had been "necessarily confined" in an accredited hospital to be entitled in any case to the stipulated indemnity; (2) that such necessary confinement was a result of injury; or sickness, the cause of which originated while the policy was in force and more than fifteen days after May 1, 1952; and (3) that the doctor's fee claimed because of the surgery was an obligation or risk within policy coverage.

■ The case has had several trials solely on theory of a "sickness." Extensive references to the testimony of Dr. Seely are made by appellee in such connection, summed up as follows: Preoperative diagnosis, "ventral hernia, intra-abdominal pain, cause undetermined." Upon cutting and finding no rupture or hernia, his post-operative diagnosis was, "intra-abdominal adhesions, pendulous fat and skin of the abdominal wall. Lipoma of left thigh." Several types of adhesions were found, caused by the 1942 operation; described adjustments were made, gall stones palpated, of which plaintiff testified to no symptoms. Upon exploration "there was no evidence of pathology (condition normal) other than these adhesions"; but that adhesions were not the cause of her trouble; and that he did not know what was wrong with Mrs. Wood when she was put on the operating table. We quote further from the testimony of Dr. Seely on cross-examination: "Q. * * * After you had gone in there and you did see what you did find after opening the abdomen, that you wouldn't say to a reasonable probability, from a medical and surgical point of view, as to how long the cause of her condition had been in existence, would you? A. No." He stated that the operation was advisable but not necessary and that the fatty tissues were removed from abdominal wall for cosmetic purposes (improvement of unsightly part) as evidenced by the following question: "Q. You did

it to help her that much since you were already in her abdominal cavity? A. That's right."

The testimony of Dr. Seely is inconclusive and conflicting in greater part; establishing no relationship between operation and cause of plaintiff's trouble, considered as a "sickness." But plaintiff's January experience has been alleged as an "injury" followed by hospitalization and surgery; and we have requested of counsel supplemental briefs concerning whether the question of an injury has been raised as a basis of the claimed liability. In this connection Mrs. Wood testified that while "I was nursing a lady and in assisting her to the bathroom she almost got away from me and in keeping her from falling, why, it took the whole weight on myself * * * immediately after letting her full weight come into my arms, why I developed this soreness in my abdomen"; that she began to suffer continually, "down in the lower part of my abdomen". She went to the hospital on advice of Dr. Seely, testifying to a recovery from the operation and was "all right now." We conclude that above testimony, without more, raises a jury question of accidental bodily injury due to unusual strain or exertion. See 1 Words and Phrases, Accidental Injury, p. 370, and Pocket Part.

■ Appellee strenuously objects to the injection of "accident" into this case after three trials on theory of a liability arising from "sickness"; especially so in view of written reports made to it by both claimant and doctor and shown in defendant's exhibits 1, 2, 3 and 4. These writings were not conclusive of the facts therein stated; Coxson v. Atlanta Life Ins. Co., 142 Tex. 544, 179 S.W.2d 943. They were in answer to stereotyped questions of which we quote a few:

(Mrs. Wood) "Q. Nature of your sickness or disease? A. Pain and soreness in lower left part of abdomen.

"Q. Have you ever been afflicted with or had symptoms of the same condition? A. No.

"Q. What was the nature of the illness or injury? A. Abdominal hernia."

(Dr. Seely) "Q. Nature of sickness or disease? A. Soreness and pain on standing in the lower part of abdomen.

"Q. To what do you attribute the cause of the disease or condition? A. Lifting strain.

"Q. Describe in full the illness or injury with complete diagnosis. A. Hernia, ventral, adhesions intra-abdominal, redundancy of abdominal walls.

"Q. Contributing cause or conditions? A. Nursing and lifting patient.

"Q. Has the patient previously suffered from the same or similar condition? A. No.

"Q. In your opinion when did the basic cause of this disability originate? A. In January.

"Q. Did you order hospital confinement of the patient? A. Yes." And although above answers were given under the heading of "Sickness" rather than "Injury", plaintiff stoutly maintained on cross-examination that inception of her ailment was more in nature of an accident than a sickness.

■ It is further argued that the January episode amounted to neither an accident nor sickness necessitating hospital expense; appellee pointing to the testimony of Dr. Seely, who, after the operation, characterized it as merely advisable and for cosmetic purposes. Yet plaintiff says that following the operation she had recovered and was "all right"; and we cannot anticipate the turn of medical testimony on another trial. 3–B Tex.Jur., sec. 974, pp. 524, 525. Nor is this "a case where only the expert medical witness can furnish admissible evidence of probative value to resolve the question, and discharge appellant's burden of proof", as in Scott v. Liberty Mutual Ins. Co., Tex.Civ.App., 204 S.W.2d 16. The testimony of lay wit-

nesses is competent on another trial. Vann v. National Life & Acc. Ins. Co., Tex. Com.App., 24 S.W.2d 347. The cause is reversed and remanded to trial court on the issue just above discussed.

Reversed and remanded.

On motion for rehearing.

Rehearing denied.

DIXON, Chief Justice (concurring).

I concur in reversing and remanding this case, but I do so reluctantly.

Appellant brought suit on a hospitalization indemnity policy. At the conclusion of the evidence the trial court instructed a verdict in favor of appellee, who was defendant in the trial court.

The policy bound appellee to indemnify appellant for hospital and medical expenses resulting from (a) accidental bodily injury; and (b) "sickness the *cause* of which originates while this policy is in force and more than fifteen days after the date hereof, * * *." The policy then lists the various types of hospital expenses for which appellant was indemnified "if the insured or any member of the Family Group shall be *necessarily* confined within a recognized hospital * * *." (Emphasis ours.)

This is the third trial of the case.

In our original opinion we held, and I think correctly, that there was no evidence showing any causal connection between the operation and appellant's trouble, considered as a "sickness" under the terms of the policy. The operation and the hospital expense were not necessary as a result of sickness. Therefore appellant was not entitled to recover under the theory of "sickness," the cause of which originated more than fifteen days after the date of the policy.

We reversed the case on the theory that there was some evidence of probative force that appellant's trouble was the result of an accidental bodily injury.

Part of the evidence on that feature of the case was that offered by appellant, a vocational nurse, who testified that while lifting a patient she strained herself, causing soreness and pain in the lower part of the abdomen. About a month later upon her doctor's advice she went to a hospital, where an operation was performed. Appellant testified that she was operated on for a hernia but that she left the matter of what was the matter with her up to her doctor. It is the hospital expense and the doctor's bill which are the subject of this controversy.

The other part of the evidence on the accidental injury theory was offered by appellant's doctor. Appellant was a heavy person. She had recently reduced from a weight of 230 pounds to a weight of 203 pounds. The doctor was not satisfied as to whether as a result of the strain she might have had a rupture through a previous incisional scar. So he arranged for her to go to the hospital for the operation.

On direct examination the doctor testified that the operation disclosed a small hernia, which he repaired. But on cross-examination, upon being confronted with his own written report made out by him immediately following the operation, he frankly admitted that he was mistaken about having found a hernia and having repaired it. He testified that there was no hernia. He found the abdominal muscles strong. He did find some adhesions, dating back to an old operation performed fourteen years earlier, but no evidence of any strain. He removed some of the adhesions and also removed some of the fatty tissues that were present. The operation also disclosed the presence of gall stones, but he did not remove them as he had not expected to find gall stones and had not obtained appellant's permission to operate for that purpose. There had been no symptoms of gall stones. The doctor

also frankly admitted that the operation was not necessary.

In my opinion there is some evidence in the record of probative force that appellant strained herself while lifting a patient and that the strain caused a hernia, which necessitated an operation. The doctor's evidence was conflicting on the question. The rule is that conflicts in the testimony of a witness must be resolved by the jury. Ford v. Panhandle & S. F. Ry. Co., 151 Tex. 538, 252 S.W.2d 561, at page 563.

Under the circumstances it was error for the trial court to instruct the verdict in favor of appellee.

Yet I am frank to say that in my opinion a finding in favor of appellant by the jury, based on record evidence now before us, would have been contrary to the overwhelming weight of the evidence, and it would have been the court's duty to set aside the jury's verdict and grant appellee a new trial. The doctor's testimony as a whole, despite the conflict in his testimony, is quite convincing that there was no hernia. And appellant's own testimony as to what the operation disclosed, if it is admissible at all, is of very little probative value. The overwhelming weight of the evidence is that neither she nor her doctor knew the cause of her trouble. Her statement that she had no further trouble after the operation, is not proof of causal connection, as was held by Judge Norvell, now on our Supreme Court, but then on the San Antonio Court of Civil Appeals, in National Bankers Life Ins. Co. v. Ezerneck, 278 S.W.2d 892.

The student of jurisprudence may well ask: If it was error to instruct the jury in favor of appellee in this case, then by what logic or reason can it be said that, if the case had been submitted to the jury and a verdict favorable to appellant had been returned, it would have been the duty of the court to grant a new trial?

The reason for this rule, if there is any reason involved in it at all, lies in the distinction which has grown up in our law between "no evidence" and "insufficient evidence." Trial courts may direct verdicts and appellate courts may reverse and render judgments only when there is "no evidence" to support a jury submission. If there is some evidence of probative value, the trial court must submit the case to the jury, but in the event the trial court believes the evidence is "insufficient" to support the jury verdict (that is, the verdict is contrary to the overwhelming weight of the evidence), then the court must set aside the jury verdict and grant a new trial. If the court fails to set aside such verdict, but grants a judgment based on it, the Court of Civil Appeals should reverse and remand the case, but it may not reverse and render.

Limitations of space forbid any further discussion of this peculiarity in our law. The matter is discussed at length in the following cases: Missouri Pacific Ry. Co. v. Somers, 78 Tex. 439, 14 S.W. 779; Choate v. San Antonio & A. P. Ry. Co., 90 Tex. 82, 37 S.W. 319; Id., 91 Tex. 406, 44 S.W. 69; Stevens v. Masterson's Heirs, 90 Tex. 417, 39 S.W. 292; Houston & T. C. R. Co. v. Strycharski, 92 Tex. 1, 37 S.W. 415; King v. King, 150 Tex. 662, 244 S.W.2d 660. It is also the subject of an article by Judge Garwood of our Supreme Court in 30 Tex. Law Review 803, for October, 1952.

I concur in overruling the motion for rehearing.