**CAGE BROTHERS and Cecil Ruby Contracting Company, Appellants,**

v.

**Earl B. McCORMICK et al., Appellees.**

No. 13726.

Court of Civil Appeals of Texas.

San Antonio.

Feb. 23, 1961.

Rehearing Denied March 22, 1961.

Groce & Hebdon, Richard Tinsman, San Antonio, for appellants.

Lieck & Lieck, San Antonio, Terry L. Jacks, San Marcos, for appellee.

MURRAY, Chief Justice.

Appellants' statement of the nature of the case is as follows:

"This is a case where four different plaintiffs alleged damages to their houses as a result of blasting operations conducted by defendants in a limestone quarry. The case was tried before a jury and upon the jury's findings a judgment was entered for the various

plaintiffs. Defendants are here appealing from a denial of their motion for judgment non obstante veredicto solely on the ground that there was no evidence introduced which would support the jury finding that defendants were negligent." .

We cannot agree that appellants are appealing from a denial of their motion for judgment non obstante veredicto. They did not except to the order denying their motion for judgment non obstante veredicto, neither did they give notice of appeal from such order, because it is an interlocutory order from which no appeal is allowed by statute. Art. 5, § 6, Texas Constitution, Vernon's Ann.St.; Arts. 1819, 1823, 1824, and Art. 2249, Vernon's Ann.Tex.Stats.; Morrow v. Corbin, 122 Tex. 553, 62 S.W. 2d 641; Mendoza v. Baker, Tex.Civ.App., 319 S.W.2d 147; Myers v. Smitherman, Tex.Civ.App., 279 S.W.2d 173. Appellants did except to the judgment rendered on the verdict of the jury, and did give notice of appeal from that judgment.

In determining whether there is "some evidence", as that term is understood, to support the jury's answers to the special issues, where they found that appellants in conducting their blasting operations were negligent in using an excessive amount of dynamite and in determining whether the giving of an instructed verdict or a judgment non obstante veredicto would be proper, all testimony must be considered in its most favorable light to the one against whom the instruction or the judgment non obstante veredicto is to be given, and conflicts are to be disregarded and every reasonable intendment deducible from the evidence indulged in his favor. Watt v. Texas State Board of Medical Examiners, Tex. Civ.App., 303 S.W.2d 884; Rockett v. Texas State Board of Medical Examiners, Tex. Civ.App., 287 S.W.2d 190; Texas Employers Ins. Ass'n v. Smith, Tex.Civ.App., 235 S.W.2d 234; McElwee v. Mfrs. Cas. Ins. Co., Tex.Civ.App., 221 S.W.2d 381.

The evidence here shows that this was not an isolated case of blasting but daily blasting, over a period of about six months in a hard limestone quarry. That these daily blastings were tremendous explosions causing great tremors and shaking. That as a result of such blastings dishes would rattle in the cupboards, and tools would fall off the wall in workhouses. Rock would be hurled great distances. One rock weighing 85 pounds was found 730 feet from the nearest edge of the quarry, and it was still warm from the blasting. There were no cracks in appellees' houses before the blastings, but when the blasting started cracks began to appear in their walls. Appellees' houses were built on concrete foundations, were well constructed of rock, rock veneer or brick veneer. There were other houses of lumber construction in the vicinity which were not injured, but houses of lumber construction can stand more earth tremors than can houses constructed as appellees' were. One disinterested witness said that he was seated on a concrete porch at the home of one of appellees when a blast went off in the quarry, and it seemed to him that it bounced him one or two inches up off the concrete porch. Mrs. McCormick testified that she was on her back porch, of concrete construction, sweeping, when a blast went off in the quarry, and the porch cracked open almost before her eyes, and after each blast it got bigger. Appellees complained, directly and indirectly, to appellants just as soon as the blasting started. Appellee Herold Abel complained to Cecil Ruby, one of appellants, soon after the blasting began, and was told that he had a job to do and to let it go, and when they got through he (Ruby) would fix it up. Appellees' expert, Dr. Tonn, testified that by seismograph tests appellants could have determined whether they were creating too much tremor or concussion to appellees' houses, but they did not make such tests. In this way a safety standard could have been set up, but it was not. There were several disinterested witnesses who testified of the great concussions, shakings, quiver-

ings and tremors every time a blast went off in the quarry.

Appellees' expert witness, Dr. William H. Tonn, Jr., testified that he is a consulting engineer; that he holds a Bachelor of Science Degree, Master of Science Degree, and a Doctor of Philosophy Degree in Engineering from the University of Texas; that he is a licensed engineer in the State of Texas and belongs to several national societies, namely, Sigma Zi, American Institute of Chemical Engineers and American Chemical Society; that he limits his work to a study of problems relating to fires, explosions and collisions; that he is familiar with dynamiting and operation of quarries.

Dr. Tonn related the procedures to start a quarry in virgin ground. He explained the seismograph machine which measures movement and displacement of earth. He further explained that the accelerograph machine measures acceleration or propagation of waves. He stated there are two things you are interested in in beginning a quarry operation, one is the location of the blasting and the proximity of buildings or anything else that might suffer from blasting. The proper procedure is to set up a seismograph and determine just what sort of waves and transmission you are going to get, and what part of displacement you are going to get in different locations from the blast area, because no two places are alike, and there are a lot of indeterminable variables, and the only way to determine is to measure by actual measurement. The seismograph and accelerograph instruments are the best for this work. They are placed where you want to run the test. The variables depend on the formation of the earth, rock, etc., on top and below the surface. He stated that if a house is located a given distance from the blast, the most accurate way to make sure that blast operations will or will not affect a house is to run a test in that area with the seismograph, and if you just go in and blast without a test, you are not sure of no dam-

age. Blasting sets up wave vibrations in the ground which represent displacement, and they are what cause damage at various points from the blasting. They travel less distance in soft ground and further in rock or hard formations. He personally inspected the pit in question, which he said had a dense light brown limestone and a limestone material of bluish nature. The bluish material is hard and fairly dense limestone and is pretty hard. It is located in the balcones fault. In blasting you try to break the material up so that it can go in a rock crusher.

He further testified that he examined the cracks in appellees' homes, and that they were caused from blasting; that he knows blasting damage when he sees it, and can recognize it from its characteristics. In explaining the damage to a house like Herold Abel's he said, "if the stresses and strains are strong enough, they break it." If it don't break, it is within the safe zone. If the blast was in safe limits, it would not break, but if it exceeds safe limits, you get breaks. He had considerable experience in determining settling cracks as opposed to explosions, and had checked some 800 houses that had settled, within the last year, and stated that they are characteristically different. Appellants attempted to show that the cracks were produced by settling. Dr. Tonn testified in detail to the damages to appellees' houses, and that they were all from blast damage, and the magnitude was such that the vibration had to be excessive. In speaking of the effect of repeated daily blasting and its effect on a house once it is cracked, he said that it is accumulative and keeps getting worse, and the same force is not required to widen or make the cracks worse, and they will widen. In answer to a long hypothetical question embodying the testimony of the various witnesses concerning the blasting, vibrations, etc., he stated that in his opinion "the proof is in the pudding." It was blast damage. The jury found in answer to Issues Nos. 1, 7, 13 and 19, that appellees' houses sustained damage

from blasting operations by the appellants between July 23, 1957 and January 31, 1958, and in answer to Issue No. 6, that Abel's house was damaged in the sum of $2,000; in answer to Issue No. 12, that McCormick's house was damaged in the sum of $3,000; in answer to Issue No. 18, that Goehring's house was damaged in the sum of $1,000, and in answer to Issue No. 24, that Allen's house was damaged in the sum of $500. These findings were not attacked in any way by appellants in their motion for judgment non obstante veredicto, and such findings were supported by the evidence.

██ Appellants offered the testimony of Louis D. Payne, appellants' blaster and L. S. Beasley, appellants' safety engineer, also the testimony of C. W. Parish, who qualified as an expert in blasting. Much of the testimony they gave is in conflict with the testimony offered by appellees, but where the overruling of a motion for judgment non obstante veredicto alone is involved the conflict of these expert opinions can be disregarded. Furthermore, the jury was not required to believe the opinions of appellants' experts. 35 C.J.S. Explosives § 11(8)b, p. 314; King v. New Haven Trap Rock Co., 146 Conn. 482, 152 A.2d 503. Payne and Beasley were employees of appellants and were the men who did the blasting and were therefore interested witnesses.

We conclude that there was "some evidence" as that term is understood in law, to support the jury's findings in answer to Issues Nos. 4, 10, 16 and 22, to the effect that appellants in conducting the blasting operations used an excessive amount of dynamite. Kelly v. McKay, 149 Tex. 343, 233 S.W.2d 121; Universal Atlas Cement Co. v. Oswald, Tex.Civ.App., 135 S.W.2d 591, affirmed 138 Tex. 159, 157 S.W.2d 636; Codell-Oman Construction Co. v. Sorensen, 5 Cir., 273 F.2d 703.

In Kelly v. McKay, Justice Hart, speaking for the Supreme Court, said:

"The principal contention of the petitioner in this Court, who was the defendant in the district court, is that the rule of res ipsa loquitur cannot properly be applied to this case, and this was the point on which the writ of error was granted. The authorities cited by the parties on this point have been carefully studied. However, upon a full consideration of the record, we are of the opinion that it is unnecessary for us to decide this question, because there was some evidence offered by the plaintiffs which would reasonably sustain a judgment in their favor, without the aid of the rule of res ipsa loquitur; and therefore the trial court erred in instructing a verdict for the defendant at the conclusion of the plaintiffs' testimony. In so deciding we have followed the settled rule that we must view the evidence in the light most favorable to the party against whom the verdict was instructed. White v. White, 141 Tex. 328, 172 S.W. 2d 295; Hoover v. General Crude Oil Co., 147 Tex. 89, 212 S.W.2d 140.

"The plaintiffs testified that simultaneously with the explosions in the defendant's caliche pit, which is between 700 and 1200 feet from the plaintiffs' premises, the 'whole premises' were shaken, cracks appeared in the walls, chimney and fireplace of their home, objects were shaken out of a cabinet to the floor, a wall 'buckled out,' 'large pieces of rocks' fell off of the rock walls of the home, a rock fell out of the wall of the garage, almost striking Mr. McKay, and 'a fairly good size rock' fell from the fireplace. Following these explosions, doors stuck which had formerly opened and closed properly, part of a wooden door 'pulled apart', and floors sagged and were weakened so that furniture shakes as the plaintiffs walk across the living room and dining room. Also, after blasts in the defendant's pit, the garage pulled away

from the house; the corners of the downstairs rooms pulled apart; a big crack appeared in the concrete porch; water in the wells became clouded; the butane gas line burst and a plumbing connection in the bathroom was broken. Other persons owning property near the caliche pit testified to similar effects from the explosions upon their houses.

"The plaintiffs also offered the testimony of Mr. Stanley F. Sawyer, who testified that he had had experience with the use of explosives, including blasting in caliche pits; that he had examined the rock formation on which the plaintiffs' house rested and the topography of the land between the caliche pit and the McKay premises; that, in his opinion, 100 to 150 pounds of explosive would be necessary to cause a tremor or shaking of rock at the distance the McKay premises were located from the caliche pit; that he never found so much explosive necessary to quarry gravel or caliche 'under reasonable conditions,' and that, in his opinion, there would be no need to use a blast of 150 pounds of explosive in excavating a gravel pit. Numerous objections were made and sustained to this witness' testimony, and the part admitted in evidence, as summarized above, is somewhat fragmentary, but when it is construed most favorably to the plaintiffs, it would afford a substantial basis for the conclusion that the defendant used more explosive than was reasonably necessary in order to operate his caliche pit, although, as the Court of Civil Appeals correctly says, there is no direct evidence of the amount of explosives the defendant used."

The Supreme Court held the evidence was sufficient to require a submission of the case to the jury.

Appellants rely upon Klostermann v. Houston Geophysical Co., Tex.Civ.App., 315 S.W.2d 664; Sinclair Oil & Gas Co. v. Gordon, Tex.Civ.App., 319 S.W.2d 170; Stanolind Oil & Gas Co. v. Lambert, Tex. Civ.App., 222 S.W.2d 125; and Dellinger v. Skelly Oil Co., Tex.Civ.App., 236 S.W.2d 675. These cases are all seismograph explosion cases, and the facts are so different from the case at bar that a full discussion of them here would serve no useful purpose. We overrule appellants' point of error No. One.

Our above holding renders it unnecessary to pass upon appellants' point of error No. Two, relating to appellants' alleged negligence in failing to use a seismograph or accelerograph.

■■ By their third and last point, appellants contend that the trial court erred in allowing interest on the amounts recovered from the date the blasting ceased, January 31, 1958, instead of from the date of the judgment, as appellees only plead for interest from the date of the judgment. Appellees did pray for general relief. Under our present liberal rules of pleading, Rules Nos. 67 and 90, Texas Rules of Civil Procedure, we are unable to say, from the record before us, that the court erred in allowing interest from January 31, 1958, the date blasting ended. Interest may be recovered under a prayer for general relief. Watkins v. Junker, 90 Tex. 584, 40 S. W. 11; Texarkana & Ft. S. R. Co. v. Brinkman, Tex.Com.App., 292 S.W. 860; Hairston v. Richie, Tex.Civ.App., 338 S.W. 2d 263; Buckner & Sons v. Arkansas Fuel Oil Corp., Tex.Civ.App., 319 S.W.2d 204. Appellants' Point No. 3 is overruled.

The judgment is affirmed.